BANKERS TRUST COMPANY OF DETROIT *v.* RUSSELL.

SAME *v.* PERCHICK.

SAME *v.* SAME.

SAME *v.* GREEN.

1. MORTGAGES—TRUST MORTGAGE—ASSIGNMENT OF RENTS.

Appointment of mortgagee by mortgagors as their agent to sell and dispose of mortgage did not make mortgagee trustee for persons to whom sales might be made and therefore does not make instrument trust mortgage within meaning of statute authorizing assignment of rents and profits (3 Comp. Laws 1929, §§ 13498, 13499).

2. TRUSTS—TRUSTEE NOT AGENT—TRUSTEE DEFINED.

"Trustee" is not agent, but may be defined generally as person in whom some estate, interest or power in or affecting property is vested for benefit of another.

3. MORTGAGES—ASSIGNMENT DID NOT CREATE TRUST.

Mortgagee's assignment of proportional undivided interest in note and mortgage to purchasers of participating certificates did not create relation of trustee and *cestui que trustent*, but said purchasers appointed mortgagee as their agent to collect and give acquittance for sums falling due under terms of mortgage.

4. CONSTITUTIONAL LAW—POLICE POWER—STATUTES.

Under police power vested in legislature to promote public welfare, it may enact "emergency statutes," designed to promote health, morality, comfort, and peace of people of State.

5. SAME—CONSTRUCTION OF STATUTE JUDICIAL POWER.

Legislature may not by statute attempt to exercise judicial power by construing existing statute for court.

6. STATUTES—CONSTRUCTION.

Court may construe statute only as it reads, not as equitable considerations might impel it to do, nor may changed conditions control in construction to be placed on language employed.

7. MORTGAGES—TRUST MORTGAGE—STATUTES—RETROACTIVE EFFECT —ASSIGNMENT OF RENTS.

Act No. 55, Pub. Acts 1933, amending Act No. 228, Pub. Acts 1925, by adding new section defining term "trust mortgage," as used in earlier act, may not be given retroactive effect, so as to change ordinary mortgage into trust mortgage, and thus give legality to assignment of rents and profits.

Appeal from Wayne; Kilpatrick (Arthur W.), J. Submitted January 4, 1933. (Docket No. 20, Calendar No. 36,805.) Decided January 25, 1933. Submitted on rehearing June 6, 1933. Decided June 21, 1933.

Four separate bills by Bankers Trust Company of Detroit, a Michigan corporation, against Gustav F. Russell and others and John A. Milotte, trustee (Edwin K. Reuling, substituted), for appointment of a receiver to collect rents under an assignment pursuant to an alleged trust mortgage and to foreclose same. Cases consolidated. From orders for plaintiff, defendant trustee appeals. Decree of reversal in this court affirmed on rehearing.

*Frank C. Cook* and *John P. O'Hara,* for plaintiff.

*Butzel, Levin & Winston* and *James O. Murfin* (*Edward D. Quint* and *Carl L. Whitchurch,* of counsel), for defendant trustee.

ON REHEARING.

SHARPE, J. After decision in these cases the defendant Milotte, trustee, died, and Edwin K. Reuling

was appointed a successor-trustee. On petition therefor, and by consent of counsel, he was substituted as a defendant in all of said cases.

Counsel for the plaintiff insist that our former holding (261 Mich. 579), based on the decision in *Equitable Trust Co.* v. *Milton Realty Co.*, 261 Mich. 571, is not decisive of the questions presented in these cases, for the reason that the "Bankers Trust Company of Detroit is trustee under an express written designation from the moment of delivery of the mortgage." This claim is founded upon the provisions in other instruments executed by the parties to the mortgage at the time of its execution and delivery. The defendant Milotte was trustee under second mortgages on the property, and it is questionable whether he was chargeable with notice of any rights of the plaintiff, except those provided for in the instrument as recorded. But, in our opinion, a consideration of those instruments does not sustain the claim so made. They are so similar in effect that we but refer, as counsel do, to those in the *Russell Case*. In a communication, addressed to the plaintiff and signed by the mortgagors, reference is made to the application of the latter to the former "for a Construction Mortgage Loan," amounting to $38,000, "which you are placing and have agreed to sell for my account on property," a description of which follows. It is then said:

"It is distinctly understood by us that you are placing this mortgage to sell for our account, and that you are acting as our agent, and that any money which you may, or might advance to us before the sale of such mortgage shall be considered only as an advance against the proceeds of sale, and in taking such mortgage you are underwriting a construction loan on this property. We agree that your proposed method of placing this loan is to take from us

a promissory note for the amount of the loan, payable to you, secured by a mortgage direct to you, and that you will then sell said note and mortgage, either as a whole, or in part, or by participating certificates in which you may guarantee to the purchaser both principal and interest, and thus add to the soundness and salability of our mortgage."

This is followed by a statement that in compensation for the service to be rendered, which includes the "guarantee upon sale to the purchaser or purchasers," the plaintiff should receive the sum of $1,900 and an agreement on the part of the applicant that the plaintiff should make payment to the contractor on the written order of Mr. Russell; that proper releases of lien rights should be furnished to it; and that all of the net proceeds of the mortgage were to be used only in the construction of the building until it was fully completed. The concluding paragraph reads as follows:

"Should the sale of such mortgage not be immediate, it is understood that you are to have all rights of hypothecation; and until such sale is consummated, we hereby agree to pay you interest at the same rate as called for in the mortgage on all sums advanced against the proceeds of sale."

The mortgage was given to secure the payment of a promissory note for $38,000, executed by the mortgagors, payable to the order of the plaintiff in instalments, with interest at six per cent.

The plaintiff then issued and sold what are called "Participating Certificates." One of them appears in the record. In it the plaintiff, in consideration of $1,000 paid to it by the bearer thereof, "does hereby sell, assign, transfer and set over to the holder * * * a proportional undivided interest" in that part of the note executed by the mortgagors,

and "a like proportional interest in such mortgage, retaining however the right to bring any suit or other proceeding deemed proper to enforce payment of said note or foreclosure of said mortgage in event of default in any of the terms of said mortgage." The assignment is then declared to be subject to conditions thereafter stated, "mutually agreed to by the company and the holder hereof." In one of these conditions "the holder irrevocably appoints the company his, her, or its agent and authorizes the company in its own name" to collect and give acquittance for sums payable on the note and mortgage as they mature, and "to institute any legal or equitable suit or proceedings necessary or requisite to carry out the authority granted." The company agreed to cause the mortgagors to maintain fire insurance and pay all taxes upon the mortgaged premises and to "save the holder harmless from any default of the mortgagors therein;" to pay to the holder interest according to the coupons annexed and to pay the principal thereof "as and when collected \* \* \* but in any event within 18 months" subsequent to the due date thereof.

It was further provided:

"The company shall bear all expenses of the agency and in the handling and collection of said note and mortgage and shall keep and retain for its services all sums received by it from said note and mortgage over and above the amounts to be paid to the holder under paragraph 3 hereof as compensation for its services. \* \* \*

"Upon 60 days' notice, 'the company' reserves the option to repurchase the interest transferred by this assignment on any interest period date after one year from date of mortgage upon payment of par and accrued interest, and a premium of one per cent. if repurchased before maturity."

(A copy of one of the coupons does not appear in the record, nor is there any statement as to the interest rate therein.)

We have set forth these instruments at some length, owing to the insistence of counsel that under the facts disclosed in them the plaintiff became a trustee "from the very beginning." The appointment by the mortgagors of the plaintiff as their agent to sell and dispose of its mortgage surely did not make it a trustee for the persons to whom sales might be made. It was intrusted with possession of the note and mortgage, both made payable to it, and might, or might not, dispose of them as it pleased. In any event, it was accountable to the mortgagors for the proceeds thereof less the sum it was to receive for the service rendered.

"A trustee is not an agent. An agent represents and acts for his principal, who may be either a natural or artificial person. A trustee may be defined generally as a person in whom some estate, interest, or power in or affecting property is vested for the benefit of another." *Taylor* v. *Davis' Administratrix,* 110 U. S. 330, 334, 335 (4 Sup. Ct. 147).

There was no relation of trustee and *cestui que trustent,* and a failure of the plaintiff to account to the mortgagors for the proceeds of the mortgage would entail a personal liability upon it. In its assignment of a proportional undivided interest in the note and mortgage, plaintiff did not create the relation of trustee and *cestui que trustent.* The purchasers or holders of these participating certificates appointed the plaintiff as their agent to "receive, collect, and give acquittance for the sums owing upon said note and mortgage as they mature, and upon full payment to discharge such mortgage from record." The obligations assumed by the

plaintiff, heretofore set forth, were those of an agent. The reservation of the right to repurchase indicates that no trust relation was intended to exist.

Counsel for the plaintiff call attention to an amendment of Act No. 228, approved April 14, 1933 (Act No. 55, Pub. Acts 1933), and given immediate effect, and urge that it should be recognized as 'emergency legislation, as it is declared to be, and given retroactive effect. It adds a section to Act No. 228, reading as follows:

"SEC. 3. The term 'trust mortgage' as used in this act, means and includes, among other forms of trust mortgages, any mortgage given to any person or corporation engaged in the business of financing or refinancing buildings or building enterprises, securing a note, notes, bonds, or obligations, and which by its terms contemplates a sale thereof in part or parts and which is actually sold in part or parts in form of certificates of participation or by assignments of undivided interests therein."

It is insisted that the legislature by this action has "indicated what it intended the words 'trust mortgage' to mean when originally placed in Act No. 228, Pub. Acts 1925," and that we should give consideration to this amendment although "it may interfere with vested rights or impair the obligation of contract."

Under the police power vested in the legislature to promote the public welfare, it may enact what are known as "emergency statutes," designed to promote the health, morality, comfort, and peace of the people of the State. *Edgar A. Levy Leasing Co.* v. *Siegel,* 258 U. S. 242 (42 Sup. Ct. 289).

In *Manigault* v. *Springs,* 199 U. S. 473, 480 (26 Sup. Ct. 127), it was declared that:

"It is the settled law of this court that the interdiction of statutes impairing the obligation of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public, though contracts previously entered into between individuals may thereby be affected. This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the government to protect the lives, health, morals, comfort, and general welfare of the people, and is paramount to any rights under contracts between individuals."

"It is generally held that a legislative body may by statute declare the construction of previous statutes so as to bind the courts in reference to all transactions occurring after the passage of the law, and may, in many cases, thus furnish the rule to govern the courts in transactions which are past, provided no constitutional right of the party concerned is violated. But it cannot, under cover of giving a construction to an existing or an expired statute, invade private rights with which it could not interfere by a new and affirmative statute; since 'to declare what the law is, or has been, is a judicial power; to declare what the law shall be is legislative.' " 25 R. C. L. p. 1047.

It may not by statute attempt to exercise judicial power by construing a statute for the court. *Stockdale* v. *Insurance Companies,* 20 Wall. (87 U. S.) 323.

We are not insensible to the situation in many cities in which property owners and holders of securities who have liens thereon are placed, owing to the existing depression. Conflicting interests are involved in these cases, and the court can but con-

strue the statute in question as it reads, and not as equitable considerations might impel us to do.

This amendment does not assume to affect instruments executed before its enactment, but places a construction upon the words "trust mortgage" as used in the original act, to be thereafter applied. Changed conditions may have effect upon a court in the enforcement of law, but cannot control in the construction to be placed on the language employed. These cases were heard by three of the Wayne circuit judges. Two of them in an opinion filed said:

"But, certainly, it must be said that at least this is not a trust mortgage as the term was understood prior to 10 years ago."

In our opinion, no trust relation was created by either the mortgagors or mortgagee, and the mortgages in question are not trust mortgages within the meaning of that term as used in 3 Comp. Laws 1929, §§ 13498, 13499. See *Equitable Trust Co.* v. *Milton Realty Co.,* on rehearing, *ante,* 673.

The decree entered in this court is affirmed, with costs to appellant.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, and WIEST, JJ., concurred. BUTZEL, J., did not sit.