UNION GUARDIAN TRUST CO. *v.* LIPSITZ.

1. ACTION—TRUST MORTGAGES—RECEIVERS—RENTS.

Question of whether or not mortgage was a trust mortgage was not rendered moot on petition for appointment of receiver in foreclosure proceedings by reason of professed willingness of defendants to pay rent to plaintiff under assignment of rents, nor by the finding that rents were not inadequate or that lease between mortgagor's assignees and their lessee was not collusive, where court was justified in finding some control of rents by it was advisable.

2. MORTGAGES—CORPORATION CLOSELY ALLIED TO MORTGAGEE-TRUSTEE.

Consideration of investment company, closely associated with trust company in transaction involving trust mortgage and sale of bonds thereunder is not indulged, where result would be the same if trust company had done all the things done by the investment company.

3. SAME—TRUSTS—ASSIGNMENT OF RENTS.

Mortgage which ran to mortgagee as trustee for the benefit of bondholders when executed, in which mortgagee had no power to change or control it, and which was recorded and bonds sold thereunder *held*, a trust mortgage, no subterfuge having been employed to evade ejectmeent statute by use of clause intended to operate as assignment of rents (3 Comp. Laws 1929, §§ 13498, 13499, 14956).

4. SAME—TRUSTS—BONDHOLDERS—SECRET AGREEMENTS.

Purchasers of bonds secured by trust mortgage are not required to go behind instrument to which bonds refer them to discover any private intent or secret agreement of parties to instruments.

5. SAME—ASSIGNMENT OF RENTS AND PROFITS—STATUTES.

Statute authorizing assignment of rents in or in connection with trust mortgage to secure bonds issued thereunder does not require that assignment operate immediately and deprive

mortgagor of income before default but merely authorizes an assignment theretofore forbidden (Act No. 228, Pub. Acts 1925 [3 Comp. Laws 1929, §§ 13498, 13499]).

6. SAME—AUTHORITY TO COLLECT RENTS—INTENT.

Authority to collect rents under a trust mortgage and apply them on the debt, to take effect on default of mortgagor or parties deriving interest from him, and upon giving notice to tenant or other occupier of premises *held*, valid and intended to operate as assignment of rents under Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499).

7. STATUTES—AMENDMENT—ASSIGNMENT OF RENTS AND PROFITS— EJECTMENT.

Contention that statute authorizing assignment of rents under trust mortgages is invalid because it alters or amends ejectment statute without re-enacting or publishing latter at length contrary to article 5, § 21 of the Constitution *held*, untenable (3 Comp. Laws 1929, §§ 13498, 13499, 14956).

Appeal from Wayne; Miller (Guy A.), J. Submitted June 14, 1934. (Docket No. 68, Calendar No. 37,870.) Decided July 2, 1934.

Bill by Union Guardian Trust Company, against Harry Lipsitz and others to foreclose an alleged trust mortgage. On petition for appointment of receiver to collect rents and profits under alleged assignment. From order denying appointment of receiver but requiring payment of rents to plaintiff and monthly accountings, defendants Glasser and Hoffman appeal. Affirmed.

*Monaghan, Crowley, Reilley & Kellogg,* for plaintiff.

*Shapero & Shapero,* for defendants Glasser and Hoffman.

FEAD, J. August 3, 1926, defendant Lipsitz applied to the Guaranty Trust Company for a con-

struction loan of $185,000. August 9th he executed and acknowledged a memorandum that he had entered into an agreement with the Guaranty Trust Company whereby he was to execute a mortgage as security for services to be rendered and money to be loaned him by the company. No such agreement appears in the record.

Under date of August 16th he executed to the Guaranty Trust Company, "trustee, for the holders of the bonds or obligations secured hereby," a real estate mortgage to secure 208 bonds aggregating $180,000. The mortgage was acknowledged August 18th and recorded August 26th.

Under date of August 16th an agreement was made by Lipsitz, Guaranty Trust Company and Guaranty Investment Company, under which the latter contracted to sell the bonds to the public and to account to the mortgagor for the full amount of the issue, whether sold or not, less compensation for selling. Dated the same day (but filed September 16th) Lipsitz executed an application to the Michigan securities commission for authority to sell the bonds, representing that they were trusteed by the Guaranty Trust Company and that the Guaranty Investment Company had purchased them at $167,400.

Defendants, by oral testimony, claim the Guaranty Investment Company did not become a party to the transaction and the agreement made with it and the application to the securities commission were not executed until after the recording of the mortgage.

The first money paid to Lipsitz was on September 1st, by checks of the Guaranty Investment Company. All future sums were disbursed through the investment company. The first bond was sold to

the public September 27th, and all were finally disposed of. Pending printing of the individual bonds Lipsitz issued a single temporary bond for $180,000, which was held by the Guaranty Trust Company.

The Guaranty Trust Company and the Guaranty Investment Company were separate corporations but closely associated. They had the same officers, the same offices, the trust company paid all salaries and expenses but there was not an identity of stock owners. Defendants contend the participation of the investment company was merely colorable and a subterfuge and the trust company was always the real party in interest.

The Guaranty Trust Company became insolvent and, on November 13, 1931, plaintiff was appointed successor trustee of the mortgage loan by the circuit court for Wayne county. July 15, 1932, it filed bill for foreclosure in the instant suit.

In 1927 Lipsitz conveyed the premises to defendants Glasser and Hoffman. In 1929 the latter executed a 10-year lease to defendant Helpert at rent of $2,250 per month. In 1931 the lease was canceled by agreement and a new one executed for the balance of the term with monthly rents of $1,900 for five months and $2,250 thereafter. June 1, 1932, an agreement was made that the rent be reduced to $700 per month until July 1, 1934, and thereafter adjusted to conditions. June 10, 1932, the trustee served notice of default and demand for rents. It then discovered that the premises were in possession of Helpert under a lease. The rent at $700 per month was paid to the trustee to January, 1933. Nothing was paid in February or March and, since April, 1933, only $300 per month has been paid to the trustee.

March 17, 1933, without knowledge of the trustee, the Helpert lease was canceled and a new one made expiring July 31, 1934, with rent for four months of $300 per month, the fifth month at $400, and thereafter $500 per month. October 2, 1933, a new notice of default and assignment of rents was served on tenants by the trustee and in a few days countermanded under an agreement between the parties that Helpert deposit the rent with his attorney to abide the action.

October 24, 1933, plaintiff filed petition for receiver to collect the rents pledged by the mortgage. Its principal claim was that the rents reserved in the last Helpert lease were inadequate and the lease was not made in good faith. The court held that the rents did not appear to be grossly inadequate nor the result of collusion among defendants but that there was sufficient suspicion of improper management to require the court to maintain some sort of supervision. It entered an order that defendants pay plaintiff the rents reserved in the Helpert lease until the lease terminates; that defendants furnish plaintiff monthly statements of receipts and disbursements; and that the petition for appointment of receiver be denied, on condition of the regular payment of rents and without prejudice to the right to renew the application upon change in conditions. The appeal is from such order.

The court held the instrument a trust mortgage and the clause for assignment of rents valid. The question was not made moot by defendants' professed willingness to pay the rents to plaintiff nor the finding that the rents were not inadequate or the lease collusive because the court held that some control of rents by it was advisable. To justify any

control required determination of the character of the instrument and the validity of the assignment clause. We think the facts justify supervision by the court, as conditions demand, if it be authorized by the mortgage.

Defendants contend the instrument is not a trust mortgage, on the authority of *Equitable Trust Co.* v. *Milton Realty Co.,* 261 Mich. 571; *Equitable Trust Co.* v. *Milton Realty Co.,* 263 Mich. 673; *Bankers Trust Co. of Detroit* v. *Russell,* 263 Mich. 677; *Equitable Trust Co.* v. *Wetsman,* 264 Mich. 26. The argument is that as the Guaranty Investment Company did not become a party to the transaction until after the mortgage was recorded and, in any event, was merely an *alter ego* of the trust company, the sole consideration for the mortgage when executed and recorded was the money to be loaned and services to be performed by the trust company; therefore, no other beneficiaries were then interested in it and, because it was security only to the trust company, which was also mortgagee-trustee, it was not a trust mortgage when recorded nor until bonds were sold. The contention attributes controlling force to what was merely one of the considerations in the above cases.

We do not deem it necessary to consider the investment company in the transaction. The result would be the same if the trust company had done all the things done by the investment company.

As a matter of fact, the mortgage secured nothing when it was recorded because nothing had been advanced on it. As in most bond issues, the mortgage was executed and recorded before the bonds were sold. The distinction between the cited cases and the one at bar is manifest and fundamental. In the cited cases it was clearly pointed out that the mort-

gage ran to the mortgagee individually and not as trustee; when recorded, the mortgagee, and no one else, was a beneficiary in it; while a trust would arise between the mortgagee and bondholder on sale of bonds, the trust would be created by act of the mortgagee, not of the mortgagor; and the mortgagor had established no trust but, on the contrary, had conveyed the whole mortgage title to an individual and thereby established a private relationship. Many times Mr. Justice SHARPE stated the basic idea, expressed in 263 Mich. 673 (*Equitable Trust Co.* v. *Milton Realty Co.*):

"The trust thus created was by the mortgagee, and not by the mortgagors, or by anything contained in the mortgage itself." p. 676.

"They (the mortgagors) placed no property in the hands of the mortgagee to be held by it in trust." p. 675.

At bar, the mortgage, by its terms, runs to a trustee for the benefit of all bondholders; the trust was created by the mortgagor, without power of the mortgagee to change or control it; it was impressed upon the property by the conveyance of the mortgagor to a trustee in trust, not to an individual; and the mortgagee took in trust, not as an individual.

It is true that, although an instrument is in form a trust mortgage, it may be shown to be a private instrument; as if the lender intends to, and does, retain all the securities and the mortgage is given in trust form merely as a subterfuge to evade the ejectment statute. *Lambrecht* v. *Lee,* 264 Mich. 56. No such subterfuge appears at bar. General distribution of the bonds was contemplated by the parties, contracted for, and had. Moreover, regardless of the mutual rights or liabilities of the orig-

inal parties in a private controversy between them, they established the character of the instrument as to the public when they executed and recorded it in trust form and sold bonds thereunder. Purchasers of bonds are not required to go behind the instruments to which their bonds refer them and conduct an inquisition of the parties to discover their private intent or secret agreement. Unless a mortgagor is so estopped from claiming that such a mortgage is not what it purports to be, no one could safely buy bonds without procuring unassailable and unretractable evidence from the parties for use in a lawsuit.

The instrument is a trust mortgage.

Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), authorizes assignment of rents in or in connection with a trust mortgagee "to secure bonds or obligations issued or to be issued thereunder."

The instant mortgage was executed in 1926, apparently on an old form which had been used for private mortgages. The assignment is long, involved, and somewhat anomalous. In essentials, it reads:

"That should default be made in the payment of any of the sums of money above mentioned, then, at the option of said trustee, its successors or assigns, and without notice to said mortgagors, their personal representatives or assigns, the said trustee, its successors or assigns, as agent for said mortgagors, their personal representatives or assigns, may ask, demand, collect and receive all such rents and profits, * * * as then are or may thereafter be due or owing to said mortgagors, * * * giving notice of its intention to collect and receive such rents, or instalment of principal and interest under

land contract, to such tenants, occupiers or lessees, or vendees, and in such event said mortgagors, their personal representatives or assigns, shall be deemed to have assigned and transferred all such rents and profits, and arrears of rent, and instalments of principal and interest under land contracts, to said trustee, its successors and assigns, until the .indebtedness secured hereby is fully paid and satisfied and * * * said trustee * * * may proceed by suit or suits at law for the recovery thereof, as it shall deem advisable. * * * Such assignment shall continue, and be and remain in full force and effect, until the indebtedness secured hereby, with all interest, and items paid in pursuance of any provisions hereof, are fully paid and satisfied,'' etc.

It is further provided that the rents collected by the trustee shall be applied upon the debt and the trustee may relinquish and revive the right to collect.

Defendants contend this is a power of attorney to collect rents, not an assignment *in præsenti.* The mortgage specifically provides that upon notice it shall be an assignment. The statute does not require that the assignment operate immediately and thus deprive the mortgagor of the benefit of the income before default. Its purpose is to authorize an assignment theretofore forbidden, not to restrict the parties in contracting for the rents as· additional security (*Security Trust Co.* v. *Sloman,* 252 Mich. 266, 273), in the manner they deem advisable. There is no statutory prohibition on the assignment taking effect *in futuri,* as on default. In fact, under the statute it does not become effective against tenants until notice. Reading the clause as a whole makes it plain that the parties intended it as an assignment of rents under the statute. *Detroit Trust Co.*

v. *Detroit City Service Co.*, 262 Mich. 14, 41. It is valid.

Defendants contend Act No. 228, Pub. Acts 1925, is invalid because it alters or amends the ejectment statute, 3 Comp. Laws 1929, § 14956, without re-enacting and publishing the latter at length, contrary to Constitution, article 5, § 21. The contention is untenable. *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481, 496.

Order affirmed, with costs.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.