## CHICAGO TITLE & TRUST CO. v. FOX THEATRES CORPORATION.

### Claim of UNION GUARDIAN TRUST CO., DETROIT, MICH.

District Court, S. D. New York.

May 7, 1936.

Dykema, Jones & Wheat, of Detroit, Mich., for Union Guardian Trust Co.

Basil O'Connor, of New York City, for receiver of Fox Theatres Corporation.

MANTON, Circuit Judge, designated to sit in the District Court.

The claimant asks that its claim be allowed for $1,482,510.75 for rents accrued but unpaid on October 27, 1931, when the foreclosure receiver was appointed. The special master has disallowed the claim for $1,421,178.55, being the amount due on October 1, 1931, the date of default upon the mortgage.

The Colwood Company, as of April 1, 1927, executed a trust mortgage, of which the claimant is trustee, on the Fox Theatre & Office Building in Detroit, Mich. At the same time the property was leased to Fox Theatres Corporation. The trust deed refers specifically to this lease and recites that as security for the mortgage debt, "the Grantor does hereby assign to said trustee said Fox lease and all rents to accrue thereon and all rights of the Grantor thereunder." The scope of the assignment is more fully detailed in the general clause reading: "All of the rents, issues, incomes, earnings and profit derivable or to be derived * * * with full right, power and authority in the said trustee to ask, demand, receive, collect, sue for and have and give complete acquittances for any of the rent * * * accrued at any time hereafter." Until a default, however, as defined in the indenture, the grantor "may and shall have the right to collect, receive, have and enjoy all the rents, etc., accruing or derivable from said premises." It is furthermore fully provided that the grantor, until default, shall retain full possession and control of the mortgaged premises, as well as the right "to collect, receive, have, enjoy and distribute the rents," etc.

An assignment of the lease was accordingly executed by the mortgagor to the trustee. This assignment refers to the trust deed in terms sufficient to incorpo-

rate the reservation that the assignment was for security, with possession and control of the property, and the right to collect the rent, in the mortgagor until default.

Since the mortgage is on real property in Michigan, the law of that state controls. Act No. 228 of the Public Acts of 1925 (Michigan) makes valid an assignment to the trustee of rents of property held under a trust mortgage for the benefit of bondholders. In Union Guardian Trust Co. v. Lipsitz, 268 Mich. 209, 255 N. W. 766, the trustee was given the right, on default, to collect "all such rents and profits, * * * as then are or may thereafter be due or owing to said Mortgagors," and "in such event said Mortgagors * * * shall be deemed to have assigned and transferred all such rents and profits, and arrears of rent," etc. In holding that this was a valid assignment to become operative on default, the court made no reference which would indicate that the rents due but unpaid at default should not be included in the assignment. The language there was clear. Since it was effective, the instant case becomes merely a question of interpreting the contract.

The assigning clauses of the trust deed, quoted supra, covered all the rents, not only those to accrue after default. Their terms are as broad as possible. The master found that the proviso giving the grantor the right, until default, to collect, receive, have and enjoy the rents, limited the scope of the assignment to rents accruing after default. Although the grantor retained the right to collect rents until default, after that occurred he had no rights. If he had not exercised his right by that time, it was gone.

That this was the parties' intent is very evident. The trust deed provided that upon default the grantor should at once turn over to the trustee all the leases, contracts, or other evidences of tenancies. These documents are as necessary to enforce a claim for past-due rent as well as that to become due thereafter. The mortgagor is left without the instruments of collection after default, and this fact, in addition to the terms of the trust deed, clearly shows that default of the mortgage operates to put the assignee in his place, with the right to collect all unpaid rents, whether then due, or to become due.

There is no occasion for an interpretation strained to favor the mortgagor. The statute was intended to protect bondholders. Security Trust Co. v. Sloman, 252 Mich. 266, 273, 233 N.W. 216, 219. It would fail to do so in so far as an owner might allow a favored tenant to run up rent arrears and then, upon default, retain the right to collect these for himself. In this mortgage and assignment, at least, the mortgagor has no right to do this.

The Fox receiver's arguments on intent and policy are unconvincing. Assignments giving the mortgage receiver the right to rent due but unpaid at the time of his appointment are valid in New York. In New York Life Ins. Co. v. Fulton Development Corporation, 265 N.Y. 348, 351, 193 N.E. 169, 170, the court said this was merely "the usual clause assigning the rents."

The "occupiers" of the premises could not be prejudiced. If they had paid the mortgagor before default, they are safe enough. If they had not paid him before they received notice not to, they can pay the receiver past-due, as well as current, rents.

Colwood, the mortgagor, was a Fox subsidiary and in 1930 declared a dividend which could not then be, and has not been paid. The suggestion that the rents have been paid by applying them as they fell due to the debt Colwood owed Fox by reason of the dividend declared but unpaid meets the stipulation that the amount in dispute was not paid. Moreover, at the agreed rental, it appears that some of these rents were due and unpaid when the dividend was declared.

The receiver tries to offset the amount Colwood owed Fox for dividends against the unpaid rents claimant seeks as Colwood's assignee. This cannot be done. The Michigan statute (Act No. 228, Pub. Acts 1925) provides that such an assignment as this is effective as against the mortgagor, from the date of the recording of the mortgage. It is just as effective against the mortgagor's sole stockholder appearing as a creditor by virtue of a dividend later declared. The proposed offset could as well be advanced against the claimant's rights to rents after default. It cannot operate to make the mortgagee's security entirely illusory. The claim for rents accrued but unpaid on October 1, 1931, should have been allowed.

688

A further claim is made against the receiver for damages suffered by breach of the lease. This was properly disallowed by the master.

The lease provided that the lessor, upon certain defaults by the lessee, might re-enter and that the lessee should remain liable for the rent reserved. The option was given the lessor to relet the premises, "and the lessee agrees to pay to the lessor, during the residue of the term remaining at the time of re-entry or repossession, the difference ascertained from time to time, between the rents and sums hereby reserved and agreed to be paid by the lessee and the amount otherwise received by the lessor on account of rent. * * * *"

The claimant's argument is that the law of Michigan, where the land is, controls. Gardiner v. Butler & Co., 245 U. S. 603, 38 S.Ct. 214, 62 L.Ed. 505; Wells v. Twenty-First St. Realty Co., 12 F.(2d) 237 (C.C.A.6); T. A. D. Jones Co. v. Winchester Repeating Arms Co., 61 F.(2d) 774 (C.C.A.2); Leo v. Pearce Stores Co., 54 F.(2d) 92 (D.C.E.D.Mich.). Michigan's rule, contrary to that of some other states, is that upon breach of a lease, the measure of damages can be fixed as the present value of the difference between the rent reserved for the remainder of the term and the fair rental value of the premises at the time of the breach. McGraw v. Union Trust Co., 135 Mich. 609, 98 N.W. 390; Leo v. Pearce Stores Co., 54 F.(2d) 92 (D.C.E.D.Mich.). And that since damages for the breach of the lease can thus be fixed, the claim may be proven in the receivership proceedings. Wm. Filene's Sons Co. v. Weed, 245 U.S. 597, 38 S.Ct. 211, 62 L.Ed. 497; Gardiner v. Butler & Co., 245 U.S. 603, 38 S.Ct. 214, 62 L.Ed. 505; Cf. In re Mullings Clothing Co., 238 F. 58, L.R.A.1918A, 539 (C.C.A.2).

However, the language of the lease precludes a lump-sum liquidation. It provides that the lessee pay the lessor "during the residue of the term remaining at the time of re-entry or repossession, the difference as ascertained from time to time between the rents and the sums hereby reserved." This is a specific provision for an exact fixation of the damages, instead of liquidation in a lump sum considered to approximate the amount of damage. It is payable from time to time, not at the date of the breach. It is not more favorable to the lessor than the Michigan rule of liquidating the amount of damages for fu-

ture rents. The lessee is protected by it, since any rise in rental values in the future would cause his loss to be less.

If this clause is thus interpreted to require serial payments of the actual amounts of difference, the lease itself makes inapplicable the rule of Michigan allowing the sum due to be ascertained. The parties have contracted away from this method of liquidation and provided for serial payments in an exact amount which cannot now be determined. No lease has been made which could give the basis for computing the actual prospective loss. The claims must be disallowed for this reason.

The amount which the master did allow is not contested and stands affirmed. The master's report is modified as indicated above, and, as modified, is affirmed.