SAVIDGE v. SEAGER.

1. EXECUTION—DESCRIPTION—DEEDS.
  Notice of execution levy on "Lot 5, Block Q, Mitchell's revised plat of Cummer & Gerrish's Addition to the village of Clam Lake, now city of Cadillac," was insufficient to affect the title of a bona fide purchaser of "Lot 5, Block Q, of Mitchell's revised plat of the village of Clam Lake," although there was no Block Q in the plat known as Cummer & Gerrish's addition to said village, and no plat known as "Mitchell's revised plat" of such addition.

2. VENDOR AND PURCHASER—RECORD OF LEVY.
  A description sufficient to convey land between man and man or to authorize specific performance of an agreement to convey, may not be sufficient to constitute constructive notice to a purchaser in good faith, without knowledge of an execution levy recorded in the office of the register of deeds.

3. SAME—EXECUTION.
  Where an officer levies on real estate, his indorsement upon the writ should describe the land levied upon with a sufficient degree of certainty to enable every person to know what property has been taken.

Error to Wexford; Lamb, J. Submitted January 14, 1913. (Docket No. 107.) Decided April 8, 1913.

Ejectment by B. Newton Savidge against Leonard Seager and another. Judgment for plaintiff. Defendants bring error. Reversed.

*Gaffney & Miltner (E. J. Millington,* of counsel), for appellants.

*Sawyer & Penny,* for appellee.

STONE, J. This is an action of·ejectment. The undisputed facts in the case are as follows: On the 1st day of October, 1909, a judgment was obtained in the circuit court for the county of Clare by one Holbrook, as a plaintiff, against Oliver La Fave *et al.,* as defendants. By virtue of a writ of *fieri facias* issued upon this judgment to the sheriff of Wexford county, that officer did, on the 16th day of November, 1909, levy upon certain parcels of land situated in the city of Cadillac, Wexford county, as the property of the said Oliver La Fave. There were three pieces of property levied upon, but it is conceded that the true description of the one involved in this case is lot 5, block Q, of Mitchell's revised plat of the village of Clam Lake, now city of Cadillac. The notice of the levy thus made by the sheriff of Wexford county was filed with the register of deeds on the said 16th day of November, and recorded as required by law. The description in the notice of levy reads as follows:

"All the right, title, and interest of Oliver La Fave, one of the above-named defendants, in and to lot 5, block Q, Mitchell's revised plat of Cummer & Gerrish's addition to the village of Clam Lake, now city of Cadillac, State of Michigan."

Upon the 15th day of October, 1909, the defendant Leonard Seager purchased of the said La Fave lot 5, above mentioned, and, upon the request of Mr. La

Fave, a deed was drawn, bearing the date last above given, but, owing to the illness of his wife, was not signed, acknowledged, or delivered until the 10th day of January, 1910, and was duly recorded January 11, 1910.    Mr. Seager paid $1,200 for the property in cash, represented by two checks, which consideration was fully paid on or about October 15, 1909.    And, immediately after the drawing up of said deed and the payment of the consideration, a tenant, being in possession under La Fave, was notified of the change in question, and thereafter paid rent to Seager.

On February 1, 1910, the sheriff sold the property to the plaintiff in this case pursuant to the levy made thereon, and on the same day executed the required certificate of sale and filed the same with the register of deeds.    The description in the notice of sale and in the certificate of sale was the same as the notice of levy, to wit:

"Lot 5, block Q, Mitchell's revised plat of Cummer & Gerrish's addition to the village of Clam Lake, now city of Cadillac."

. In other words, the property described in the levy proceedings places this lot in the proper block Q, but not in the correct plat.    There is a plat known as Cummer & Gerrish's addition, but there is no plat known as Mitchell's revised plat of Cummer & Gerrish's addition.

"G. A. Mitchell's revised plat of the village of Clam Lake, now city of Cadillac, and Mitchell's revised plat of the village of Clam Lake, now city of Cadillac, is one and the same thing."

There is a lot 5, block Q, in the G. A. Mitchell's revised plat of the village of Clam Lake, now city of Cadillac.    There is but one block Q in the city of Cadillac, and that is found in Mitchell's revised plat of the village of Clam Lake.    There is no lot 5, block

Q, of Cummer & Gerrish's addition to the village of Clam Lake, now city of Cadillac. Later on, at the request of the sheriff, the description was changed in the book of records by drawing a red ink mark across the words "Cummer & Gerrish's addition to." The original certificate had been taken from the office of the register of deeds by the sheriff, and later brought back with the change corresponding with the change made at the request of the sheriff in the book of records.

On the 19th day of May, 1911, the time of redemption having expired, the sheriff of Wexford county executed to the plaintiff in this case a sheriff's deed to the said property. It will be noted that the deed executed by the sheriff was the first instrument in connection with the levy transaction which properly described the property. And to accomplish this, the changes had been, as above indicated, made in the certificate of sale and the record thereof.

From and after the 22d day of October, 1909, to the time of the commencement of this suit, the defendant Seager was in possession of the property through his tenants, and received payments of rent from them. The plaintiff claims title to the lands by virtue of the levy and sale above referred to. The case was tried before the circuit judge without a jury, and a finding of facts and conclusions of law were filed, and a judgment was entered for plaintiff for the recovery of the premises, in the usual form. Upon due exceptions and assignments of error, defendants have brought the case here for review; the defendant Edgett being the tenant of the defendant Seager. It is claimed by appellants that two questions are presented:

(1) Was the description of the premises levied upon, as given in the notice of the levy, sufficient to give notice, so as to make the lien valid against subsequent bona fide conveyances?

(2) Was there anything in defendant Seager's pos-

session of this property after the 22d of October, 1909, to afford actual or constructive notice to the plaintiff so as to invalidate his lien?

1. Section 9224, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11386), among other things, provides:

"That no levy by execution on real estate, made after this act shall take effect, shall be valid against bona fide conveyances made subsequent to such levy, until a notice thereof, containing the names of the parties to the execution, a description of the premises levied upon, and the date of such levy, shall be filed by the officer making the same, in the office of the register of deeds of the county where the premises are situated, and such levy shall be a lien thereon from the time when such notice shall be so deposited; and the lien thus obtained, shall, from the filing of such notice, be valid against all prior grantees and mortgagees of whose claims the party interested shall not have actual nor constructive notice."

It appears by this record that, if the notice of levy did not constitute notice to defendant Seager, then he had no notice. Mr. La Fave's deed antedated the sheriff's sale, the corrected certificate of sale, and the sheriff's deed. We think the question hinges, therefore, on the sufficiency of the description in the notice of levy, which was recorded on November 16, 1909. It follows that, if the notice of levy did not contain a sufficient description, then the defendant Seager received no notice in accordance with the provisions of the statute quoted above. It is hardly necessary to quote authorities to show the purpose and policy of the recording acts. It has been well said that the object of all registry laws is to impart information to parties dealing in property respecting its transfer and incumbrances, and thus to protect them from prior secret conveyances and liens. This court has said that the design of the recording laws is to prevent fraud in real estate transactions by securing certainty and publicity in such dealings, and that the recording

laws are designed to give information in the most
accurate, reliable, and permanent form. *Barnard* v.
*Campau,* 29 Mich. 162-165; *Atwood* v. *Bearss,* 47
Mich. 72 (10 N. W. 112).

The records should give information in such a form
that the exact state of the title may be easily dis-
covered; they must be characterized by certainty, ac-
curacy, and reliability. A description, which in a deed
of bargain and sale may be sufficient to pass title, may
not be sufficient in a public record to give notice to
subsequent purchasers. The trial judge seems to have
been of contrary opinion, for he says in his conclu-
sions of law:

"That a description of real estate which is suffi-
ciently certain and definite to pass or incumber the
title to the land intended to be transferred or incum-
bered is sufficiently certain and definite to operate
as notice under section 9224 of the Compiled Laws
of 1897."

In the case of a deed of bargain and sale between
parties, the aim of the courts is always to construe the
instrument so as to give it validity, and this is done
upon the theory that the grantor and grantee had dealt
with each other; that both are sufficiently acquainted
with the real estate which is the subject of transfer;
and that therefore an error or inaccuracy in the de-
scription will be corrected so as to make the instru-
ment valid and effective, and to carry out the will of
the parties. But the theory of interpretation of public
records is different.

In *Amberg* v. *Rogers,* 9 Mich. 342, Justice CAMP-
BELL used the following language:

"The intendments made to help out deeds between
individuals, arise out of the desire of the law to en-
force mutual contracts according to their intent. But
in *ex parte* proceedings to divest title, those who
rely on them must, I think, place themselves where
no ambiguity or difficulty can arise, and conform rig-
idly to the statute."

The description of real estate required in a notice of sale is defined in section 9169, 3 Comp. Laws (4 How. Stat. [2d Ed.] § 11323), and reads as follows:

"In every such notice, the real estate to be sold shall be described with common certainty, by setting forth the name or number of the township in which it is situated, and the number of the lot, or by some other appropriate description of the premises."

The language of Justice HOOKER in *Jackson* v. *Sloman*, 117 Mich. 126 (75 N. W. 282), which was a case relating to the description of real estate in a tax proceeding, is appropriate here:

"We should, however, note a distinction between cases upon conveyances between private persons, arising out of a sale and intentional transfer, and those where title is sought to be divested through tax proceedings. The requirements as to the description in tax proceedings are not only aimed at securing an identification of the property that will be certain, but are designed to afford notice to the owner that proceedings affecting his property are pending. The description should therefore be such as not to mislead him, if it departs from strict accuracy as stated by statutory rules."

The identical question before us is discussed by Justice Mitchell in *Herrick* v. *Ammerman*, 32 Minn. 544 (21 N. W. 836). There was a wrong description both in the certificate of sale and in the notice of sale. He said:

"It must be borne in mind that this certificate takes effect only as the execution of a statutory power, and hence should be construed with some strictness so as to enable the purchaser to identify the land he is bidding on and the owner to ascertain what to redeem. A description sufficient to convey land between man and man, or which, if contained in an agreement to convey, would authorize a decree of specific performance, might not be sufficient in proceedings to sell land on an execution.

"When real estate is sold on legal process, it ought certainly to be described with sufficient certainty to

enable a person with common understanding to identify it. This is what the statute requires the notice of sale to contain, and certainly the certificate should contain as much. Looking at this as a practical question, and without refining on the technical distinctions between latent and patent ambiguities, it must be evident that this description would neither inform a purchaser what he was buying, nor the debtor what had been sold. It is palpably so imperfect and incomplete that the subject of sale and conveyance could not be ascertained from it. If such a description were found in a conveyance between man and man, it is possible that it could be aided by evidence of extrinsic circumstances tending to show the intention of the parties. But in these proceedings the owner of the land intended nothing. The law, through its officers, was acting in hostility to him, with a view to enforce collection of the judgments."

See, also, *Herrick* v. *Morrill*, 37 Minn. 250, 254 (33 N. W. 849, 851, 5 Am. St. Rep. 841), where the same court, speaking through the same justice, relating to the same infirmity, said:

"In these sales the policy of the law requires, not that there should exist the means of showing at some future time what is otherwise indefinite and uncertain, but that, at the time of the sale, it should be within the power of all who are by the notice invited to become bidders to know what was offered, and that it should not be left to be surmised or guessed at some future time as to what the officer intended to sell. This we think is in accordance with reason and sound policy, as well as supported by authority. *Jackson* v. *Rosevelt*, 13 Johns. [N. Y.] 97; *Jackson* v. *De Lancy*, 13 Johns. [N. Y.] 537 [7 Am. Dec. 403]; *Childs* v. *Ballou*, 5 R. I. 537, 546; *Mason* v. *White*, 11 Barb. [N. Y.] 173.

"In the present case it will be observed that the defect in the description exists in the notice as well as the certificate of sale. The only important evidence in this case not in the former is that the description, as far as it goes, fits this property, and fits no other in the county belonging to the judgment debtor. This is not evidence of intrinsic circumstances to identify

the premises in the light of which the description in itself appears certain and sufficient, but merely of facts tending to prove what property the sheriff probably intended to advertise and sell under the imperfect and defective description. The description cannot be helped out in this way. These facts were presumably not known to bidders at the sale; and, even if they were, they are not to be left thus to an uncertain surmise as to what is being sold."

See, also, *Helmer* v. *Rehm*, 14 Neb. 219 (15 N. W. 344); *Bank of Ada* v. *Gullikson*, 64 Minn. 91 (66 N. W. 131).

In that case it was held that the constructive notice imported by the record of an instrument is strictly limited to that which is set forth on its face; and if, in a deed or mortgage as recorded, the particular land in controversy is not so described as to identify it with reasonable certainty, the record is not notice to subsequent bona fide purchasers or judgment creditors. There certain lots by mistake were described in the plaintiff's mortgage as being in block 13 in the First addition to the village of Ada, but in fact the lots intended to be mortgaged were located in the original plat of the village. There was no block 13 in the First addition. The first one therein was numbered 21, and the last one in the original plat was numbered 20. The defendant had no actual notice of the mortgage, and, before it was corrected and re-recorded, he duly recovered and docketed a judgment against the mortgagor. Held, that the lien of the mortgage was subject to that of the judgment. In that case Start, Chief Justice, among other things, said:

"The fallacy of the plaintiff's claim lies in the assumption that the description in the mortgage on its face discloses in what particular it is false, and what should be corrected in or eliminated therefrom in order to describe the lots intended to be mortgaged. It is impossible to tell from the face of the description whether the mistake therein is in locating the lots in

the wrong plat or block or village. If the mistake was in locating the lots in the wrong block, and block 23 was intended, then, if 23 was substituted for 13, the description would be correct. Conceding that a person reading the description would be charged with notice that there was no block 13 in the First addition, yet it does not, as we have suggested, charge him with notice that the mistake was in locating the lots in the wrong plat, and not in the wrong block or village.

"If the defendant had had actual notice of the plaintiff's mortgage, and of the fact that there was a block 13 in the original plat, we might have a different case to consider. But the defendant had no actual notice in the premises, and he is chargeable only with constructive notice of what appeared on the face of the mortgage, as recorded at the time he docketed his judgment. The constructive notice imported by the record of an instrument is strictly confined to that which is set forth on its face; and, if in the deed or mortgage, as recorded, the particular land in controversy is not so described as to identify it with reasonable certainty, the record is not notice to subsequent bona fide purchasers or judgment creditors. *Bailey* v. *Galpin*, 40 Minn. 319 (41 N. W. 1054). In the case cited, the distinction between actual notice as respects ulterior inquiry and constructive notice implied from the fact of registration was clearly pointed out and need not be here repeated. The defendant in this case had constructive notice only of what appeared upon the face of the record of the mortgage and the description of the premises therein. This description, on its face, did not identify the lots intended to be mortgaged, or advise the defendant as to the particulars wherein it was defective; and it must be held that he had no notice, actual or constructive, that the plaintiff had a mortgage on the lots in question."

In *Schweiss* v. *Woodruff*, 73 Mich. 473 (41 N. W. 511), Justice CAMPBELL, speaking for this court, said:

"There are cases where the subsequent purchaser has a right to rely upon the face of the record, and is not bound to make inquiry outside of what the records disclose. Such are errors in recording when the record contains a wrong description of the land conveyed, or

a wrong name of the grantor, or a wrong amount as secured in a mortgage [citing cases]. But the rule does not extend to imperfect or indefinite descriptions in the premises conveyed. The question in such cases is whether the record contains sufficient to apprise a party that some right or title is claimed or attempted to be conveyed in the premises, and, if it does, the purchaser is bound to use reasonable diligence to ascertain what it is that is so claimed or attempted to be conveyed [citing many cases]."

The case nearest in point which we have been referred to in this State is that of *Burrowes* v. *Gibson,* 42 Mich. 121 (3 N. W. 293). There it was held that a certificate of levy on "lot 7 of the subdivision of lots 12, 13, and 14 of the Labrosse and Baker farms in Detroit" was not sufficient to charge a purchaser with notice that it was intended to cover "lot 7 of John Gibson's subdivision of lots 12, 13, 14 and 18 of the Labrosse and Baker farms, situated on the south side of Pine street, between Sixth and Seventh streets, according to the recorded plat of the same in the register's office of Wayne county." In that case Justice GRAVES said:

"The substantial controversy here is whether the description in the levy of the lot 7 in question was sufficiently full and correct to charge the public with notice through the certificate placed on file.

"The proposition is stated in this way because the question is not what sort of description might suffice as against parties having actual knowledge, or what might be deemed a sufficient description in itself considered, to constitute a valid levy, but it is what is sufficient to make the filed certificate afford constructive notice. And we are satisfied that this levy lacks the requisite certainty.   *   *   *

"The discrepancy is very glaring. The lot we are in quest of is not a portion of the surface which is defined by natural marks or distinguished by some name or other feature which is notorious, but it is a specific area which might perhaps be indicated by proper abuttals, although the better description, if not the necessary one, is by reference to the plat and by

the number of the lot and block as given on the plat, together with such other descriptive facts as may be practicable and essential for the purpose of identification.

"Now the levy gives no abuttals and points out no plat. The lot 7 it specifies is said to belong to the subdivision of lots 12, 13, and 14, and not to John Gibson's subdivision of lots 12, 13, 14 and 18 according to the recorded plat. Again, it does not assign the subdivision to any block or mention any block. The John Gibson subdivision is on block 13. We have, then, in the one case a John Gibson subdivision of four specified lots on a specified block according to a recorded plat, and in the other a subdivision of three specified lots made by some one not named, and not located on any block, and not referred to any plat.

"It is, we think, not possible to hold that the lot 7 in the levy was so described there as to affect the public with notice, through the certificate, that the lot 7 of the John Gibson subdivision was meant.

"The difficulty is not merely that the description in the levy has fewer badges of identification than were practicable, and should have been given. It goes further. Instead of being only a blind guide to the lot claimed, the description is a misleading one which points somewhere else."

This case is cited with approval in *Davis Sewing Machine Co.* v. *Whitney*, 61 Mich. 518 (28 N. W. 674), where this court said, in speaking of the notice of levy as against subsequent conveyances in good faith:

"As against all such rights, the notice filed must be definite and certain"—citing *Campau* v. *Barnard*, 25 Mich. 381; *Ward* v. *Citizens' Bank*, 46 Mich. 332 (9 N. W. 437); *Burrowes* v. *Gibson, supra.*

The rule which governs notices of levies is thus given in 17 Cyc. p. 1099:

"Where an officer levies upon real estate, his indorsement upon the writ should describe the land levied upon with a sufficient degree of certainty to enable every person to know what property has been

taken by virtue of the writ"—citing many cases, including *Burrowes* v. *Gibson, supra.*

In the same volume of Cyc., at page 1247, referring to a description of the property in a notice of sale, the following language is used:

"As a general rule, the officer's notice of sale should contain a full and complete description of the property to be sold, or at least a sufficiently complete description to enable prospective purchasers, in the exercise of ordinary diligence, to identify it"—citing numerous cases.

In the instant case it will be noted that the description was a wrong description, as distinguished from an imperfect or impossible description. It is the claim of the plaintiff that, by a process of elimination, defendant Seager could have ascertained that the only block Q in the city of Cadillac was in Mitchell's revised plat, and that there was no block Q in the Cummer & Gerrish addition. But the description being a wrong description, why should the defendant be driven to take his chances upon what should be eliminated from the wrong description? Might he not as well say that block Q was a mistake, or the lot levied upon was wrongly described, or that describing it as Mitchell's revised plat was an error, as well as to say that he must find that Cummer & Gerrish's addition was an error? We do not think, in the light of the cases which we have cited, that there was any such duty resting upon the defendant Seager. It is a significant, but not a controlling, fact that the sheriff himself recognized the erroneousness of the description, as shown by the fact that after the certificate of sale filed on the 1st of February, 1910, which contained a description corresponding to that in the notice of levy and of sale, he corrected the description by drawing red ink lines through the misleading words, and then took the corrected certificate back and had the register of deeds make a corresponding

change upon the records, conduct which was highly improper on the part of both officers. To sanction this conduct would be to encourage frauds on the part of officers to the injury of innocent purchasers. As has been said by this court, the notice of levy filed by the sheriff in the registry is a solemn official declaration under his official oath defining the lands which he claims to have seized. There is nothing in the law which supersedes it by any subsequent acts or declarations.

Applying the principles which we have discussed to the case at bar, defendant Seager's title to the property must be held to be valid. This view of the case renders it unnecessary for us to discuss the second subdivision of the briefs. Counsel for the plaintiff have cited many cases from our own reports, and particularly *Tuthill* v. *Katz*, 163 Mich. 618 (128 N. W. 757), where the Michigan authorities are collected and the general rule discussed.

.n speaking of the construction of deeds and instruments between contracting parties, we have endeavored to point out the distinction between that line of cases and the instant case. We held in *Tuthill* v. *Katz, supra,* where certain property was described as the "William Rowley farm," the particular description of which contained an error in one instance, that the words "William Rowley farm" were the controlling words of the description, and that such a deed would convey all that was embraced in the William Rowley farm, which in that instance appeared to be inclosed as one piece of property. The doctrine there applied was that the entire description in the deed must be taken and the identity of the land ascertained by a reasonable construction of the language used; and, if there be a repugnant call which, by the other calls in the deed, clearly appears to have been made through mistake, that does not make void the deed. This rule is in no

way modified by anything which we have said in the instant case, and we think the line of decisions there referred to is readily distinguished from the instant case.

The judgment of the circuit court is reversed, with costs.

STEERE, C. J., and MOORE, McALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.