FIRST NATIONAL BANK OF CHICAGO
v DEPARTMENT OF TREASURY

Docket No. 272431. Submitted January 8, 2008, at Lansing. Decided September 9, 2008, at 9:00 a.m. Leave to appeal sought.

First National Bank of Chicago, as trustee for BankBoston Home Equity Loan Trust 1998-1, brought an action in the Court of Claims against the Department of Treasury and the Department of Natural Resources, claiming a violation of due process of law and an unconstitutional taking of property without just compensation with respect to realty that was sold at a tax-foreclosure sale and in which BankBoston had a mortgage interest but did not receive notice of forfeiture and foreclosure proceedings. The original mortgagee, Homestead Mortgage Company, had assigned its mortgage interest to Investaid Corporation, which in turn had assigned its interest to BankBoston. Title Check, L.L.C., working under contract with defendants, had sent notices meant for BankBoston not to the address listed with the county register of deeds, but to an address it found on the Internet for FNB, with which BankBoston had merged. Following a bench trial, the court, James R. Giddings, J., awarded a money judgment for the plaintiff with interest calculated pursuant to MCL 600.6455(2). The defendants appealed, and the plaintiff cross-appealed with respect to the interest award.

The Court of Appeals *held*:

1. BankBoston was entitled under MCL 211.78i(6) to notice of the show-cause hearing under MCL 211.78j and the foreclosure hearing under MCL 211.78k.

2. The plaintiff, as BankBoston's trustee, had standing to bring suit on BankBoston's behalf. MCL 600.2041.

3. Notwithstanding the misidentification of the realty's lot number in the recorded interest of Homestead, other instruments in the chain of title created by the register of deed's grantor-grantee index, MCL 565.28(1), indicated the subsequent assignment of the mortgage interest to BankBoston.

4. The defendants failed to satisfy the requirements of minimal due process when Title Check ignored the BankBoston address

filed with the register of deeds. The notices that were sent were not reasonably calculated to apprise it of the forfeiture hearings.

5. The recording of the forfeiture certificate before the mortgage-interest assignment from BankBoston to the plaintiff did not provide BankBoston and the plaintiff with notice of the foreclosure. The defendants were under an obligation to provide proper notice to BankBoston.

6. The Court of Claims properly awarded interest pursuant to MCL 600.6455(2) instead of interest as provided in the mortgage contract. The plaintiff's action was based on a denial of due process, a constitutional tort, and was not based on the mortgage contract.

7. The Contracts Clause prohibition against statutes that impair obligations of contract, US Const, art I, § 10; Const 1963, art 1, § 10, was not violated with respect to the award of interest as provided under MCL 600.6455(2) instead of as provided in the mortgage contract. The application of the statute did not substantially impair a contractual relationship.

Affirmed.

O'CONNELL, J., dissenting, stated that defendants were not statutorily required to provide the plaintiff with notice because the certificate of forfeiture was recorded before the plaintiff's mortgage assignment. In any event, BankBoston's assignment of its interest to the plaintiff does not enable the plaintiff to assert BankBoston's personal right to notice. In sending the notices to FNB, Title Check sent the notice required by due process, i.e., notice reasonably calculated under the circumstances to apprise the interested party of the pendency of forfeiture proceedings and afford it an opportunity to present its objections.

TAXATION — REAL PROPERTY — TAX SALES — NOTICES TO MORTGAGEES.

A mortgagee that obtains a money judgment for denial of due process against a governmental agency that sells the mortgaged property at a tax sale without properly notifying the mortgagee of the forfeiture and foreclosure proceedings is entitled to interest on the judgment pursuant to MCL 600.6455(2), and not at the interest rate of the mortgage.

*Russell & McCargar, LLP* (by *Walter J. Russell*), for the plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Kevin T. Smith*, Assistant Attorney General, for the defendants.

Before: KELLY, P.J., and CAVANAGH and O'CONNELL, JJ.

KELLY, P.J. Defendants appeal as of right the judgment of the Court of Claims in favor of plaintiff following a bench trial. Plaintiff cross-appeals from the same judgment. We affirm.

### I. BASIC FACTS AND PROCEDURAL BACKGROUND

This action arose after a parcel of residential property was foreclosed under the General Property Tax Act (GPTA), MCL 211.1 *et seq.*, for the failure to pay property taxes. The trial court heard the matter on stipulated facts and exhibits, and we set forth the relevant facts here.

Brandon Larsson and Mary Larsson were owners of the property located at 604 East Oak Street in St. Johns, Michigan. The property was identified in the recorded deed as lot 66 of Prince Estates No. 2. On October 31, 1997, the Larssons obtained a promissory note for $115,200 that was secured by a first mortgage to Homestead Mortgage Company (Homestead). The mortgage was recorded with the Clinton County register of deeds on November 5, 1997, containing an incorrect lot number, but identifying the correct street address and permanent tax parcel identification number.[1] On November 7, 1997, Homestead assigned the first mortgage to Investaid Corporation (Investaid), and recorded that assignment on January 20, 1998. The recorded assignment included the correct lot number and street address.

---

[1] The Clinton County register of deeds interpreted the property description in the mortgage to read "lot 88 of Prince Estates No. 2," rather than "lot 66," and indexed it accordingly. According to the Clinton County Register of Deeds, Carol Wooley, recorded mortgages cannot be searched by tax identification number and deeds recorded before 2001 cannot be searched by tax parcel identification number.

The 1999 property taxes on the property, due February 14, 2000, were never paid.[2] On February 23, 2000, Investaid assigned the first mortgage to BankBoston, NA (BankBoston), formerly known as First Bank of Boston, and the assignment listed BankBoston's address as 100 Federal Street, Boston, Massachusetts, 02210. Shortly thereafter, BankBoston merged with Fleet National Bank and changed its name to FNB. FNB's registered address was 111 Westminster Street, Providence, Rhode Island, 02903-2305. On April 3, 2000, the assignment from Investaid to BankBoston was recorded and correctly described the subject property as lot 66 along with the correct street address and permanent tax parcel identification number.

On March 20, 2001, a certificate of forfeiture from the state was recorded describing the property as lot 66 and containing the correct street address and permanent tax parcel identification number. On April 15, 2001, an assignment of the first mortgage from BankBoston to plaintiff was recorded, again describing the property as lot 66 and containing the correct street address and permanent tax parcel identification number. Of particular note, the assignment listed plaintiff's address as 100 Federal Street, Boston, Massachusetts, 02210, the same address listed for BankBoston in the February 23, 2000, mortgage assignment.

On June 18, 2001, a petition for foreclosure was recorded describing the property as lot 66 and containing the correct permanent tax parcel identification number. On August 10, 2001, the first mortgage to Homestead Mortgage was rerecorded to clarify the property description, which described the property as lot 66 and contained the correct street address and

---

[2] On November 23, 1999, Brandon quitclaimed the property to Mary. The quitclaim deed was recorded on July 11, 2000.

permanent parcel identification number. On that same day, the assignment from Homestead to Investaid was rerecorded, describing the property as lot 66 and containing the correct street address. Also on that same day, the assignment from Investaid to BankBoston was rerecorded, describing the property as lot 66 and contained the correct street address and permanent parcel identification number.

Defendants contracted with Title Check, L.L.C. (Title Check), an outside source, to locate the addresses of interested parties through real estate and other records and to send notices of the forfeiture and foreclosure proceedings. Title Check sent notices of the forfeiture and foreclosures hearings through registered mail, return receipt requested, to Mary Larsson, Homestead, Investaid, and BankBoston, and those notices were delivered and signed for between December 6 and 19, 2001.

Except for BankBoston, Title Check sent all notices to the addresses recorded with the Clinton County register of deeds. With respect to BankBoston, rather than sending notices to the address recorded with the Clinton County register of deeds, the notices were addressed to 111 Westminster Street, c/o FNB, Providence, Rhode Island, 02903-2305 and to 15 Westminster Street, Providence, Rhode Island, 02903-2305. Title Check obtained the Rhode Island addresses from the Federal Deposit Insurance Corporation (FDIC) website listing for financial institutions. During all times relevant to these proceedings, plaintiff continued to maintain an office at 100 Federal Street, Boston, Massachusetts, to accept service of process regarding any mortgages where "BankBoston had been a party of interest in the mortgage or the security given for the mortgage," including the February 23, 2000, mortgage

assignment. Title Check's tracing worksheet does not disclose that it was aware of the April 15, 2001, recorded mortgage assignment from BankBoston to plaintiff. No notices were mailed to either plaintiff or BankBoston at the address listed in the recorded mortgage assignment from Investaid to BankBoston. Notices of the forfeiture and foreclosure hearing were also published in the Clinton County News on December 23 and 30, 2001, and on January 6, 2002, listing, in part, BankBoston as an interested party.

Following a foreclosure hearing, a judgment of foreclosure was issued in the amount of $2,316.24. A July 30, 2002, notice of judgment of foreclosure was recorded on September 20, 2002. On September 23, 2002, the property was sold at auction for $109,000, with a minimum bid starting at $7,800 to cover delinquent taxes, interest, penalties, and costs associated with foreclosure.

Plaintiff brought this action against defendants, asserting that its mortgage interest had been foreclosed without due process. In its amended complaint, plaintiff asserted that the amount in excess of the taxes owed, penalties, and fees taken as authorized by MCL 211.78n amounted to an unconstitutional taking without just compensation. Plaintiff argued that while BankBoston and plaintiff's addresses were known at the time of forfeiture and foreclosure, notice was not sent to the required address, amounting to a denial of due process. Plaintiff claimed that as an assignee and trustee of BankBoston, it was entitled to assert the rights of its assignor and beneficiary, including the right to proper statutory notice and due process regarding foreclosure. Plaintiff further argued that the enforcement of the GPTA by defendants resulted in an unconstitutional taking because it amounted to a taking of

private property for public use and plaintiff did not receive just compensation for the taking.

Defendants contended that no violation of due process occurred because the recorded forfeiture certificate, at a minimum, gave plaintiff constructive notice of the forfeiture and the impending foreclosure proceedings, and that the certified notices sent to BankBoston at the address indicated by the FDIC website and a second address were sufficient to comply with due process. Defendants also asserted that plaintiff was on notice of the forfeiture and the pending foreclosure because the April 15, 2001, mortgage assignment from BankBoston to plaintiff was recorded after the certificate of forfeiture was recorded. According to defendants, neither plaintiff's nor its predecessor's interest in the property could be identified by public records because plaintiff's interest had yet to be recorded when the forfeiture certificate was issued, and because neither the first mortgage nor the mortgage assignments were in the chain of title when the forfeiture certificate was recorded because the first mortgage incorrectly referred to lot 88. Further, defendants claimed that it was unclear whether plaintiff actually had an interest in the property because the 1998 assignment from BankBoston to plaintiff was purportedly executed before BankBoston obtained an interest in 2000. Defendants also denied that an unconstitutional taking without just compensation occurred because plaintiff's interest in the property ended upon foreclosure.

The Court of Claims found in favor of plaintiff, concluding that it was denied due process. The court found that defendants did not afford BankBoston or its trustee, plaintiff, due process because Title Check failed to mail notice to BankBoston's last known address as identified in the mortgage assignment and character-

ized that address as the address reasonably calculated to apprise BankBoston and plaintiff, its trustee, of the then pending hearings. The court further concluded that in regard to MCL 211.78i(9), BankBoston was an owner of a property interest entitled to notice. To that end, the court concluded that the subsection did not preclude plaintiff from raising the due process claim for itself or on behalf of its beneficiary, BankBoston, because neither was properly served. The Court of Claims entered a judgment in plaintiff's favor together with interest calculated under MCL 600.6455(2).

## II. STANDARDS OF REVIEW

Following a bench trial, a trial court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). A finding is clearly erroneous when, although there is evidence to support it, we are left with a definite and firm conviction that a mistake has been made. *Id.* Resolving this issue involves questions of statutory interpretation, which are reviewed de novo. *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 525-526; 697 NW2d 895 (2005). "The primary goal of statutory interpretation is to ascertain and give effect to the Legislature's intent[,]" and the "Legislature is presumed to have intended the meaning it plainly expressed." *Linsell v Applied Handling, Inc*, 266 Mich App 1, 15; 697 NW2d 913 (2005). If statutory language is clear and unambiguous, we are required to apply the statute as written. *Id.* Whether a party has been afforded due process is a question of law that is reviewed de novo. *Reed v Reed*, 265 Mich App 131, 157; 693 NW2d 825 (2005).

### III. ENTITLEMENT TO NOTICE

Defendants argue that the Court of Claims effectively concluded that plaintiff was statutorily entitled to notice and this constitutes error requiring reversal. While plaintiff's interest was not recorded until after the certificate of foreclosure was filed, BankBoston was entitled to notice as a trust beneficiary that retained a properly recorded interest in the property. Accordingly, under the circumstances of this case, we do not find any error in the Court of Claims decision.

Under MCL 211.78i, an interest holder identified in the records of the register of deeds is entitled to notice if identifiable before a certificate of forfeiture is recorded. MCL 211.78i(1) provides that, once a property has been forfeited to the county treasurer under § 78g, MCL 211.78g, the foreclosing governmental unit is required to initiate a record search to identify the property owners entitled to notice of the subsequent show cause hearing under § 78j, MCL 211.78j, and the foreclosure hearing under § 78k, MCL 211.78k. The notice provisions of § 78i(6) that were in effect in 2001, when the notices were sent, provided:[3]

> The owner of a property interest is entitled to notice under this section of the show cause hearing under section 78j and the foreclosure hearing under section 78k if that owner's interest was identifiable by reference to any of the following sources before the date that the county treasurer records the certificate[4] required under section 78g(2):
>
> (a) Records in the office of the county register of deeds.
>
> (b) Tax records in the office of the county treasurer.
>
> (c) Records in the office of the local assessor.

---

[3] This section was amended by 2003 PA 263, effective January 5, 2004, and has since been amended by 2006 PA 611, effective January 3, 2007.

[4] The certificate refers to the certificate of forfeiture. MCL 211.78g(2).

(d) Records in the office of the local treasurer.

The notice provisions in § 78i "are designed to ensure that those with an interest in the subject property are aware of the foreclosure proceedings so that they may take advantage of their redemption rights." *In re Petition by Wayne Co Treasurer*, 265 Mich App 285, 292-293; 698 NW2d 879 (2005).

### A. BANKBOSTON'S ENTITLEMENT TO NOTICE

Plaintiff is the trustee for the BankBoston Home Equity Loan Trust 1998-1, and BankBoston is the servicer of the trust pursuant to a power of attorney and a servicing agreement. As such, BankBoston is a beneficiary that retained a property interest when it assigned the mortgage to plaintiff. Therefore, for purposes of MCL 211.78i(6), BankBoston was an owner of a property interest entitled to notice at the time the state was required to send notices. See *Bankers' Trust Co of Detroit v Russell*, 263 Mich 677, 682; 249 NW 27 (1933) (reasoning that a trustee holds interest in property for the benefit of another). Further, pursuant to MCL 600.2041, plaintiff, as trustee, is statutorily permitted to file a lawsuit on behalf of BankBoston, its beneficiary. See *American Family Ass'n of Michigan v Michigan State Univ Bd of Trustees*, 276 Mich App 42, 51; 739 NW2d 908 (2007) (noting that a plaintiff must meet both the statutory and constitutional requirements in order to have standing). Ultimately, given the relationship between plaintiff and BankBoston and BankBoston's initial ownership of a property interest and continuing beneficial ownership interest in that property interest, it is irrelevant whether plaintiff was entitled to notice under MCL 211.78i(6) because Bank-Boston, its beneficiary, was entitled to notice that it did

not receive as required by statute, and plaintiff was allowed to bring suit on its behalf.

### B. ERRONEOUS PROPERTY DESCRIPTION

Defendants assert that, because the first mortgage of Homestead improperly described the property as lot 88 instead of lot 66, those subsequently recorded instruments that correctly described the property as lot 66 were nevertheless unidentifiable for purposes of the period when the foreclosing entity was required to search the register of deeds to identify interests in the property as provided under the applicable version of MCL 211.78i(6). However, defendants mistakenly assert that those instruments were outside the chain of title, i.e., undiscoverable at the register of deeds. MCL 565.28(1) requires every register of deeds to keep a general index to each set of books by alphabetically entering the name of each party to each recorded instrument. This grantor-grantee index creates the chain of title to a particular property. 1 Cameron, Michigan Real Property Law (3d ed), § 11.29, p 404. A person is on constructive notice of those instruments appearing within a chain of title. *Houseman v Gerken*, 231 Mich 253, 255; 203 NW 841 (1925).

Here, a search of the former owners' names would have revealed the name of the first mortgage provider, Homestead, and a search of Homestead's name would have revealed Investaid's name, thereafter revealing the name of BankBoston. Accordingly, those instruments were not outside the chain of title. Further, because the mortgage assignment to BankBoston accurately described the property, the foreclosing entity had, at a minimum, constructive notice of BankBoston's interest in the property. Cf. *Savidge v Seager*, 175 Mich 47, 59-60; 140 NW 951 (1913) (concluding that the

recorded instrument did not provide constructive notice
of an interest in the property because the description
was too inaccurate).

### IV. NOTICE AND DUE PROCESS

Defendants claim that given the circumstances, the
notices sent to the Rhode Island addresses were suffi-
cient to satisfy due process. We disagree. As our Su-
preme Court has recently held, an address reasonably
calculated to reach a person entitled to notice is the
address listed on a recorded deed. *Sidun v Wayne Co
Treasurer,* 481 Mich 503; 751 NW2d 453 (2008). Be-
cause defendants had BankBoston's address but chose
to disregard it and send the notices to other addresses
obtained from the Internet, defendants failed to provide
minimal due process. *Id.* at 514-515.

#### A. ADEQUACY OF NOTICE

The GPTA provides that state and federal due pro-
cess standards, rather than specific provisions of the
act, govern the adequacy of notice under the act:

> It is the intent of the legislature that the provisions of
> this act relating to the return, forfeiture, and foreclosure of
> property for delinquent taxes satisfy the minimum require-
> ments of due process required under the constitution of
> this state and the constitution of the United States but that
> those provisions do not create new rights beyond those
> required under the state constitution of 1963 or the con-
> stitution of the United States. The failure of this state or a
> political subdivision of this state to follow a requirement of
> this act relating to the return, forfeiture, or foreclosure of
> property for delinquent taxes shall not be construed to
> create a claim or cause of action against this state or a
> political subdivision of this state unless the minimum
> requirements of due process accorded under the state

constitution of 1963 or the constitution of the United States are violated. [MCL 211.78(2).]

See also Republic Bank v Genesee Co Treasurer, 471 Mich 732, 737; 690 NW2d 917 (2005).

Due process protects a real estate owner's interest in property. *Dow v Michigan*, 396 Mich 192, 204; 240 NW2d 450 (1976). Due process requires that an owner be given proper notice and an opportunity to contest a state's claim to take the property for the owner's failure to pay taxes. *Id.* at 196. "[N]otice must be sent to an address reasonably calculated to apprise the object of notice of the pending proceedings, and this requirement must be evaluated in the context of affording the object of notice minimal due process." *Republic Bank, supra* at 739. As the United States Supreme Court has stated, " 'when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it[.]' " *Jones v Flowers*, 547 US 220, 229; 126 S Ct 1708; 164 L Ed 2d 415 (2006), quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950); *Dow, supra* at 211.

In light of our Supreme Court's decision in *Sidun, supra,* and after reviewing the evidence presented below, we conclude that the notices sent to BankBoston were not reasonably calculated to apprise it of the forfeiture hearings. BankBoston recorded its assignment from Investaid, and this assignment provided its Boston address, at which it continued to maintain an office after its merger with Fleet. Fleet is a large international bank with offices all over the country. Given the sheer size of Fleet and the offices it undoubtedly assumed as a result of the merger, Fleet determined the address where notices should be sent. Even after the merger, plaintiff still maintained the BankBos-

ton address with the register of deeds as the proper place to receive notice regarding the property.

However, Title Check disregarded this address and instead chose to send notices to two Fleet addresses in Providence. It is unknown what relationship, if any, these Providence addresses had to either the property or the pending foreclosure. The notices sent were not reasonably calculated to apprise BankBoston of notice. Without any statutory authority, a foreclosing governmental unit lacks the power or discretion to determine the best business practices of private entities. On the basis of its own policies and procedures, BankBoston made the decision to provide its Boston address in the mortgage assignment. Plaintiff also listed the Boston address on the assignment recorded with the register of deeds and Fleet maintained that office at all times relevant to these proceedings. Defendants may not simply substitute their judgment with regard to where parties should receive notice. Through Title Check, defendants were aware of BankBoston's Boston address and failed to send notice to that address.

> Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." *Dow v Michigan*, 396 Mich 192; 240 NW2d 450 (1976), quoting *Mullane, supra* at 315. That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice. *Mullane, supra* at 315. [*Sidun, supra* at 509.]

Accordingly, a party that desires or is required to provide notice of forfeiture and foreclosure proceedings to an entity with an interest in the real property may not simply disregard the address provided by that entity to the

register of deeds. The Court of Claims did not err in concluding that defendants failed to satisfy due process.

### B. PLAINTIFF'S ASSERTION OF LACK OF NOTICE

Defendants also contend that plaintiff is barred from asserting lack of notice. We disagree. MCL 211.78i(9) provides:

> The owner of a property interest who has been properly served with a notice of the show cause hearing under section 78j and the foreclosure hearing under section 78k and who failed to redeem the property as provided under this act shall not assert any of the following:
>
> (a) That notice was insufficient or inadequate on the grounds that some other owner of a property interest was not also served.
>
> (b) That the redemption period provided under this act was extended in any way on the grounds that some other owner of a property interest was not also served.

BankBoston was an owner of a property interest entitled to notice at the time the state was required to send notices and remained an owner of a property interest when it became the beneficial holder of the mortgage. Accordingly, under MCL 600.2041(1), plaintiff had standing to bring suit on BankBoston's behalf. Section 78 does not apply because plaintiff, as trustee of BankBoston, its beneficiary, had standing to pursue a due process claim against defendants, which failed to provide appropriate notice to satisfy due process. Because BankBoston did not receive statutorily required notice, defendants' argument is misplaced.

### C. CONSTRUCTIVE NOTICE

Defendants also argue that due process was satisfied because the forfeiture certificate was recorded before the mortgage assignment from BankBoston to plaintiff. We disagree.

Michigan is a race-notice state, MCL 565.29; *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006), and a recorded interest in property takes priority over subsequent owners and encumbrances, MCL 565.25(4); *Ameriquest Mortgage Co v Alton*, 273 Mich App 84, 94; 731 NW2d 99 (2006). However, it does not follow that recording a certificate of forfeiture is reasonably calculated to apprise the interested parties of the pending foreclosure. Rather, the onus is on the foreclosing governmental unit to provide notice, and a party that records an instrument with the register of deeds is not required to determine whether anything has been filed regarding foreclosure. Again, as our Supreme Court has recently stated, "[a] party's ability to take steps to safeguard its own interests does not relieve the government of its constitutional obligation. *Sidun, supra* at 517. Had BankBoston and plaintiff received notice of the proceedings at the address recorded with the register of deeds, due process would have been satisfied.[5] See *Republic Bank, supra* at 742.

---

[5] Defendants' publication of the forfeiture proceedings was also insufficient to provide statutory notice:

A notification method may be reasonable and constitutional if employing the method is reasonably certain to inform those affected," or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods. *Mullane, supra* at 315. Notably, *Mullane* recognized that the reasonableness of a particular method could vary, depending on what information the government had. That case concerned a New York law that merely required notice by publication to inform beneficiaries of a common trust fund that the fund was subject to judicial settlement. *Id.* at 309-310. The Court held that while notice by publication was constitutionally sufficient with regard to beneficiaries whose interests or addresses were unknown, notice by publication was insufficient for beneficiaries whose names and addresses were known by the government. "Where the names and post-office addresses of those affected by a proceeding are at hand,

### V. INTEREST

#### A. MCL 600.6455

In its cross-appeal, plaintiff argues that the Court of Claims erred by calculating interest based on MCL 600.6455(2) instead of subsection 1 because its interest in the property and its remedies were based on contract. We disagree. We review de novo questions of statutory interpretation. *Griffith, supra* at 525-526.

MCL 600.6455 provides, in pertinent part, as follows:

> (1) Interest shall not be allowed upon any claim up to the date of the rendition of judgment by the court, unless upon a contract expressly stipulating for the payment of interest. All judgments from the date of the rendition of the judgment shall carry interest at the rate of 12% per annum compounded annually, except that judgment upon a contract expressly providing for interest shall carry interest at the rate provided by the contract in which case provision to that effect shall be incorporated in the judgment entered. This subsection shall apply to any civil action based on tort filed on or after July 9, 1984 but before January 1, 1987 and any action pending before the court of claims on July 9, 1984. *This subsection shall apply to any action, other than a civil action based on tort, filed on or after July 1, 1984 and any action pending before the court of claims on July 9, 1984.*

> (2) *Except as otherwise provided in this subsection, for complaints filed on or after January 1, 1987,* interest on a money judgment recovered in a civil action shall be calculated from the date of filing the complaint at a rate of interest which is equal to 1% plus the average interest rate

---

the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." *Id.* at 318. Notice by publication was inadequate in the case of known beneficiaries "because under the circumstances it is not reasonably calculated to reach those who could easily be informed by other means at hand." *Id.* at 319. [*Sidun, supra* at 510-511.]

paid at auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, pursuant to this section. [Emphasis added.]

Plaintiff maintains that its action was not based on a tort, and it seeks to use subsection 1 so that the interest on the judgment will be calculated using the rate provided in the mortgage contract. By its plain language, subsection 1 applies to any civil tort action filed before January 1, 1987, and to any other type of civil action filed on or after July 1, 1984. Subsection 2 applies to all actions filed on or after January 1, 1987. The action in the instant case was filed on April 7, 2003, and a violation of due process is a constitutional tort. See *Reid v Michigan*, 239 Mich App 621, 629; 609 NW2d 215 (2000) ("[T]ypically, a constitutional tort is committed by a governmental employee exercising discretionary powers so that constitutional rights personal to the plaintiff are thereby violated.") (internal quotation marks omitted). Although the underlying property interest arose from a contractual right, plaintiff's claim was based on a lack of due process, a constitutional tort, not the mortgage contract. Moreover, the interest plaintiff seeks was already recovered as part of the constitutional tort damages. Accordingly, the Court of Claims properly calculated interest under subsection 2.

### B. CONTRACTS CLAUSE

Plaintiff claims that by operation of subsection 2, it has been denied the greater amount of interest that would have been due and payable under the promissory note. In light of this lesser amount of interest awarded, plaintiff argues that the contractual rate in the underlying promissory note and mortgage must be

respected to avoid violating the Contracts Clause of the federal and state constitutions. US Const, art I, § 10; Const 1963, art 1, § 10. We disagree. Because this issue was not raised in the Court of Claims, it is unpreserved and our "review is limited to determining whether a plain error occurred that affected substantial rights." *In re Egbert R Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007).

The Contracts Clause prohibition against any state law that impairs the obligations of contract is not absolute and must be "accommodated to the inherent police power of the State to safeguard the vital interest of its people." *Romein v Gen Motors Corp*, 436 Mich 515, 534; 462 NW2d 555 (1990) (internal quotation marks and citations omitted). The following three-pronged test was established to determine whether the state's police power is valid with respect to the Contracts Clause:

> The first prong considers whether the state law has operated as a substantial impairment of a contractual relationship. The second prong requires that legislative disruption of contractual expectancies be necessary to the public good. The third prong requires that the means chosen by the Legislature to address the public need be reasonable. [*Health Care Ass'n Workers Compensation Fund v Director of the Bureau of Worker's Compensation*, 265 Mich App 236, 241; 694 NW2d 761 (2005).]

See also *Romein, supra* at 534-536. With regard to the first prong, this Court has concluded that retroactive application of a statute relating to interest where the statue required an insurer to pay more interest than that for which it had contracted did not constitute a violation of the Contracts Clause. *Cosby v Pool*, 36 Mich App 571, 575, 578; 194 NW2d 142 (1971). Accordingly, because the situation here is substantially similar, no plain error occurred.

VI. UNCONSTITUTIONAL TAKING

Plaintiff argues that, because the subject property was sold for an amount well in excess of the taxes owed, the enforcement action here resulted in an unconstitutional taking without just compensation. Given our conclusion that the notices defendants sent to BankBoston failed to satisfy due process requirements, we need not address this issue.

Affirmed.

CAVANAGH, J., concurred.

O'CONNELL, J. (*dissenting*). I respectfully dissent. This is essentially a case of mistaken identity. Plaintiff is not BankBoston NA, which was the only entity that was even arguably owed, much less deprived of, due process by defendants. Exacerbating this fundamental mistake is the misunderstanding of two basic principles of law: the right to due process is a personal right that does not extend to third parties, and due process only requires *proper* notification of proceedings. Since the majority opinion acknowledges that notices were sent through registered mail, return receipt requested, to BankBoston, and receipt of those notices was acknowledged by signature, I am of the opinion that BankBoston received proper notice. I would reverse the decision of the trial court and remand for further proceedings.

As an initial matter, plaintiff fails to make out any claim that defendants violated any statutory obligation to provide it with notice of the tax forfeiture and foreclosure proceedings. Because the certificate of forfeiture was recorded before plaintiff's mortgage assignment, defendants were not statutorily required to provide plaintiff with notice. See MCL 211.78i(6)(a). However, the majority opinion claims, "BankBoston

was an owner of a property interest entitled to notice at the time the state was required to send notices and remained an owner of a property interest when it became the beneficial holder of the mortgage." *Ante* at 585. In my opinion, this statement does not have any support in the stipulated facts submitted below or in any law governing the sale and transfer of mortgage interests.

The mortgage assignment under which plaintiff claims its property interest expressly states that Bank-Boston transferred all its rights in the property to plaintiff as the trustee for the BankBoston Home Equity Loan Trust. Nothing in the lower court proceedings suggests that BankBoston's complete transfer of the mortgage to plaintiff left it with any residual status as "beneficial holder of the mortgage." On the contrary, the assignment was plenary and made for "valuable consideration." Therefore, BankBoston had no remaining interest in the property. In other words, BankBoston was, at most, the trust's settlor,[1] and nothing in the record verifies plaintiff's bald assertion that BankBoston and the trust were legally indistinguishable or the majority opinion's equally baseless assertion that Bank-Boston was the trust's beneficiary.[2]

---

[1] It is entirely possible on the record before us that the "trust" was simply an administrative vehicle for transferring BankBoston's interests to First National Bank of Chicago, in which case, the only entity with a property interest would be FNB Chicago.

[2] Although plaintiff has not proffered any trust documentation to demonstrate its continued relationship with BankBoston, the transaction at issue has all the earmarks of a mortgage pool trust, and some of the documentary evidence presented fully supports this conclusion. A mortgage pool trust is a trust into which a lender may place its existing mortgages (good or bad) with an eye to selling certificates of beneficial interest to investors. Therefore, its beneficiary is the group of investors who have purchased an interest in the trust's pool, not the trust's settlor. See 6 Powell, Real Property, § 44A.06. Needless to say, this type of trust

In fact, BankBoston's disposition of its entire inter-
est in the property and the property's mortgage ex-
plains why BankBoston, when it was adequately noti-
fied of the proceedings, took absolutely no action to
claim any right under the mortgage. It also explains
plaintiff's zealous pursuit of its claims as "trustee" of a
trust corpus that the assumed "beneficiary" took no
action to protect. The fact is that the only entity that
had any proven interest in the mortgage was plaintiff
First National Bank of Chicago. Unfortunately for this
financial institution, its interest in the property was not
"identifiable ... before the date that the county trea-
surer record[ed] the certificate [of forfeiture]," so de-
fendants simply were not required to send it notice of
the foreclosure proceedings. MCL 211.78i(6).[3] Instead,
it was incumbent upon plaintiff to review the register of
deeds documents when it recorded its assignment,

---

would render the validity of BankBoston's notice irrelevant to plaintiff,
and the mere possibility that the trust could have existed merely as a
mortgage pool underscores how eagerly our courts, so far, have adopted
every one of plaintiff's self-serving statements and granted to it rights
that an ordinary assignee would never enjoy.

[3] This makes sense, because it puts the onus of discovering the
compromised title on the person or entity that is considering whether the
mortgage is worth buying, and at what price. That person has a much
better opportunity to research the property's history and discover the
delinquent taxes than the taxing authority has of detecting the "real"
mortgage holder in a stream of serial, and sometimes artificial, financial
transactions. This system relieves the unpaid taxing unit of the obliga-
tion to monitor, perpetually, the mortgage's progress as it drifts from
financial institution to financial institution: sometimes openly traded
and recorded, other times lying in wait among innumerable acquisitions,
mergers, and financial dealings. In other words, a person speculating on
a mortgage's value must research the value of the investment or bear the
risk that the security (the real property) has already been forfeited for
delinquent taxes or otherwise encumbered. It is not the government's
responsibility to divine unrecorded property rights, chase down the real
parties in interest, and drag them into court, with their eyes squeezed
shut and their fingers stuck in their ears, so they can timely defend their
own poorly researched investments.

which would have alerted it to the pending proceedings. Better still, it could have likely reviewed the available documents and discovered the property's tax arrearage before it gave any "Good and Valuable Consideration" to BankBoston and purchased the compromised mortgage. Because it failed to take either approach and essentially disregarded the costly and laborious record systems instituted to protect its rights in the property, I would not entertain plaintiff's claim that the government owed it still more effective forewarning that the property's taxes had not been paid.

In summary, there is no evidence that the single, isolated mortgage assignment imbued plaintiff with any continuing association with BankBoston, endowed it with any derivative entitlement to know BankBoston's affairs, or enabled it to raise BankBoston's legal claims, if any still existed.[4] Nevertheless, the majority opinion allows plaintiff to claim defects in BankBoston's notice as a justification for its own failure to defend itself against the foreclosure of its rights in the property.

---

[4] It is worth noting that plaintiff relies on the assignment to BankBoston to claim a lack of notice, but it does not rely on that assignment to claim that BankBoston was owed any money. Instead, plaintiff asserts BankBoston's assignment to the trust as the source of its own right to receive reimbursement from the property's tax-sale proceeds. BankBoston has never directly asserted any right to proceeds. Its assignment to plaintiff would clearly belie such a claim, and plaintiff would stand as one of its chief opponents. Nevertheless, plaintiff adds BankBoston's apparent right to notice with its own hopelessly tardy claim to the proceeds, and presents these two courses of a Barmecidal banquet as a constitutional excuse for its prolonged absence from the legal proceedings. I am not persuaded. The real shame is that the government, which finally collected its legitimate tax, wound up incurring more court costs to undo the original rulings, duplicating the entire process with the addition of plaintiff's long-dead claim, and paying plaintiff roughly $30,000 more in reimbursement than it received from the property's sale. This certainly does not accomplish the statute's purpose of encouraging governmental units to foreclose on properties that carry neglected tax obligations.

Recently, in *Reed v Reed*, 265 Mich App 131, 159; 693 NW2d 825 (2005), we reiterated the fundamental concept that "constitutional rights are personal, and a person generally cannot assert the constitutional rights of others." "A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Fieger v Ins Comm'r*, 174 Mich App 467, 471; 437 NW2d 271 (1988). It follows "that the right to notice is personal and cannot be challenged by anyone other than the person entitled to notice." *In re AMB*, 248 Mich App 144, 176; 640 NW2d 262 (2001). Although plaintiff has firmly established BankBoston's right to notice, it has not made out a prima facie case that it was entitled to BankBoston's notice. Stated another way, plaintiff simply has no standing to assert BankBoston's right to notice.

Finally, the majority opinion reforms the long-established standards for providing due process by using hindsight to determine whether notice was adequate and by prejudging defendants' efforts and motives, using their overall success as the operative gauge. This is a flawed standard and an unreasonable approach to the analysis. Instead, "due process requires that the notice given be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Vicencio v Jaime Ramirez, MD, PC*, 211 Mich App 501, 504; 536 NW2d 280 (1995).

In this case, defendants, through their agent, researched the registry and found BankBoston's interest in the property. It also diligently discovered that Bank-Boston no longer existed, because it had merged with Fleet National Bank. Therefore, it sent notice to the Providence, Rhode Island, address listed for BankBos-

ton (as absorbed into Fleet) on an official Federal
Deposit Insurance Corporation (FDIC) website. Fleet,
unquestionably responsible for BankBoston's previous
affairs, acknowledged receipt of this notice on behalf of
the recently dissolved entity.[5] All the parties agree that
when the forfeiture certificate was actually filed and
recorded at the register of deeds, Fleet was the proper
entity to receive notice as the financial institution that
inherited BankBoston's previous interests. Defendants
later sent a separate notice directly to "BankBoston"
through registered mail, return receipt requested, in
accordance with additional information found on the
FDIC website. Someone managing BankBoston's
former interests acknowledged receipt of that notice,
too. Interestingly, the same Fleet employee signed both
return receipts. Nevertheless, nobody representing
Fleet or BankBoston ever took any appreciable action in
response to the foreclosure proceedings.[6]

Rather than subjecting this procedure to the test in
*Vicencio*, the majority opinion holds that defendants
violated plaintiff's constitutional rights by failing to
send notice to the defunct, and apparently meaningless,
address on the original assignment to BankBoston.
Neither the majority opinion nor the lower court men-
tions that the address on the assignment was simply
wrong. Not only was BankBoston fully integrated into
Fleet and given a new address, the mortgage assign-
ment from Investaid to BankBoston misprinted Bank-

---

[5] In fact, plaintiff presented an affidavit from the individual respon-
sible for continuing the "BankBoston" address where plaintiff argues
defendants should have sent the forfeiture notice. The affiant who
continued the office was a Fleet employee.

[6] One could reasonably speculate that the reason BankBoston/Fleet
took no action once they received notices of the foreclosure is because a
search of their current mortgages revealed that they had transferred
their interest in this mortgage to a third party.

Boston's original zip code. At the time of the assignment to BankBoston, BankBoston's offices were located within the zip code 02110, but the mortgage assignment recorded at the register of deeds erroneously showed BankBoston's zip code as 02210. Plaintiff concedes the flagrant defect in this address, but still insists that due process required defendants to send notice to this incorrect, and presumably invalid, address, because it was the only mailing address that was "reasonably calculated" to ensure that BankBoston would receive notice of the time-sensitive proceedings. Plaintiff's claim boils down to an argument that defendants should have ignored the best and most current information available and mailed BankBoston's notice to the wrong address. Only then, argues plaintiff, could defendants claim that they fulfilled their constitutional obligation of sending notice to an address "reasonably calculated" to actually notify BankBoston[7] of the pending action.

In sum, the majority opinion concludes that valid notice, sent and actually received at the current and

---

[7] As mentioned, because defendants' agent discovered that Fleet had merged with BankBoston and effectively acquired its interests, Fleet was actually the entity that possessed the relevant property interest when notice was due, adding another doubtful link to plaintiff's dubious chain of arguments. The record indicates that Fleet was the appropriate recipient of notice, whether directly or indirectly on BankBoston's behalf. Plaintiff's reliance on *Republic Bank v Genesee Co Treasurer*, 471 Mich 732, 741-742; 690 NW2d 917 (2005), is misplaced. The holding in *Republic Bank* absolved the government from undertaking extraordinary research to improve its chances of actually notifying an interested party, but it certainly did not deter the practice. See *id.* at 742. As in *Republic Bank*, the notices sent by defendants in this case reached the intended parties and actually informed them of the impending proceedings. If plaintiff acquired the mortgage before the forfeiture was filed, then defendants' ignorance of that fact is completely attributable to plaintiff's failure to record its interest in a timely fashion. If plaintiff did not acquire the interest until after the forfeiture was recorded, then the proper parties were given proper notice. Due process does not require more.

correct address of a record mortgage holder, is not reasonably calculated to give the mortgage holder notice of a pending action. It further concludes that this procedure violates the due process rights of a third party who either purchases the mortgage after the forfeiture was recorded or delays recording its purchase until the forfeiture was on record. Needless to say, I disagree. In my opinion, plaintiff simply fails to demonstrate either a legal right or its violation. I would reverse the decision of the trial court and remand for further proceedings consistent with this opinion.