# STATE OF MICHIGAN

# COURT OF APPEALS

IN RE PETITION OF CASS COUNTY
TREASURER FOR FORECLOSURE.

---

CASS COUNTY TREASURER,

        Petitioner-Appellee,

v

LANDS DESCRIBED IN ATTACHED
SCHEDULE A,

        Respondent,

and

2 CROOKED CREEK, LLC, and RUSSIAN
FERRO ALLOYS, INC.,

        Respondents-Appellants.

UNPUBLISHED
March 8, 2016

No. 324519
Cass Circuit Court
LC No. 13-000430-CH

---

Before: METER, P.J., and BOONSTRA and RIORDAN, JJ.

PER CURIAM.

In this challenge to a property tax foreclosure, respondents 2 Crooked Creek, LLC ("2CC"), and Russian Ferro Alloys, Inc. ("RFA"), appeal by leave granted[1] the trial court's order denying respondents' motion to set aside the judgment of foreclosure. We affirm.

---

[1] *In re Petition of Cass County Treasurer for Foreclosure,* unpublished order of the Court of Appeals, entered February 13, 2015 (Docket No. 324519).

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In July 2010, 2CC, an Indiana limited liability company, purchased property in Penn Township, Cass County, Michigan. A real estate agreement effectuating that sale identified 2CC's address as: 36 Bradford Lane, Chicago, Illinois 60523. The real estate agreement was signed by Sergei Antipov as manager of Kava Management Company, LLC, which itself was the manager of 2CC. Antipov later attested that he lived at 36 Bradford Lane, Oak Brook, Illinois 60523, until June 15, 2011.

On July 20, 2010, the Cass County Register of Deeds recorded a deed. The deed listed 2CC's address as "36 Bradford Lane, Chicago, IL 60523," and indicated that tax bills should be sent to "2 Crooked Creek LLC" at that address. It thus reflected the same street address as had the real estate agreement, again incorrectly identifying that street address as located in "Chicago," rather than in "Oak Brook."

Property taxes were not paid for the property for 2011. In 2013, petitioner initiated forfeiture and foreclosure proceedings on the property pursuant to the General Property Tax Act ("GPTA"), MCL 211.78 *et seq.* On January 14, 2013, Title Check, LLC (Title Check), acting as petitioner's agent, sent a notice of forfeiture regarding 2011 real property taxes for the property in question, as required by MCL 211.78f. The January 14, 2013 notice letter was sent by certified mail, return receipt requested, to 36 Bradford Lane, Chicago, IL 60523 (the address identified in the deed for the receipt of tax bills). Because 60523 is actually the zip code for Oak Brook, not Chicago, notice of the letter was delivered on January 16, 2013, to 36 Bradford Lane, Oak Brook, IL 60523. The letter was left unclaimed, and on February 15 the letter was returned to Title Check marked "Unclaimed—Unable to Forward."

On April 9, 2013, petitioner prepared a certificate of forfeiture as required by MCL 211.78g, and recorded it with the Cass County Register of Deeds on April 12, 2013. On May 5, 2013, Title Check sent a notice of inspection via regular first class mail addressed to 2 Crooked Creek at 36 Bradford Ln, Oak Brook IL 60523.[2] The letter identified the property and stated that because of unpaid 2011 taxes, the property would be subject to inspection and posting of notice on June 17, 2013. The letter also stated that the property was in the process of foreclosure, and that anyone with an interest in the property should immediately contact petitioner.

Title Check performed a title search of the property, which was completed on June 3, 2013. Petitioner represented in its brief before the trial court that the title search was initiated on or before May 1. The title search revealed that the only recorded interests in the property were the deed and real estate agreement, an easement in favor of Indiana Michigan Power Company, and the certificate of forfeiture.

---

[2] After the January 14, 2013 notice letter was delivered to Oak Brook instead of Chicago, petitioner addressed all subsequent notices to Oak Brook, rather than Chicago.

On May 28, 2013, KAVA Holdings, LCC, an Alaska limited liability company, of which 2CC is a wholly owned subsidiary, and RFA, an Indiana corporation, entered into a mortgage agreement regarding the property, in the amount of $3,500,000. The mortgage agreement was subsequently recorded with the Cass County Register of Deeds on July 10, 2013.

On June 5, 2013, petitioner filed a petition for foreclosure which sought to foreclose (for unpaid taxes) on approximately 579 separate parcels of real property described in Schedule A of the petition pursuant to MCL 211.78h(1), including the property owned by 2CC. The trial court scheduled a hearing on the petition for February 18, 2014.

On June 18, 2013, Katelin Makay, a land examiner working for Title Check, visited the property and determined that the property appeared to be occupied. She was unable to personally meet with any occupant, however, so she posted on the property, in a conspicuous manner, a notice of show cause hearing and judicial foreclosure hearing. Makay posted the notice in a window next to a double door of the house on the property, took a photograph of the posted notice, and attached that photograph to her inspection worksheet.

James Frye, president of Shoreline Development Company, attested that he was at the property on or shortly after June 18, 2013, because his company was building a house there for 2CC. He saw the notice of the show cause hearing and the judicial foreclosure hearing on a window next to the front door of the house, and he then directly contacted "a representative of 2 Crooked Creek, LLC by telephone and advised them of the posted notice and was advised by the representative of 2 Crooked Creek, LLC that the matter would be taken care of." Randy Bennett, principal of Bennett Painting, and Ed Lijewski, superintendent for Shoreline Development Company, both attested that they also were at the property on or shortly after June 18, 2013, saw the posted notice, and were present when Frye contacted a representative of 2CC about the notice.

However, Antipov stated in an affidavit that he and Douglas Anderson were the only representatives of 2CC, that Frye knew they were the only representatives of 2CC, and that Frye did not tell him at any time of any notice posted on the property. Anderson stated in an affidavit that he is the registered agent for 2CC, and that he regularly spoke with Frye, but that Frye at no time informed him of the notice posted on the property.

On August 20, 2013, Title Check sent a notice letter via first class mail of the show cause hearing and the judicial foreclosure hearing to 2CC at the 36 Bradford Lane address in Oak Brook. Title Check sent another notice letter via first class mail to the same address on October 30, 2013, which also indicated that notice of foreclosure would be published between December 2013 and February 2014.

On December 6, 2013, a notice of show cause hearing and judicial foreclosure hearing was sent via certified mail to 2CC at 36 Bradford Lane, Oak Brook, IL 60523. The December 6, 2013 notice letter, sent pursuant to MCL 211.78i(7), included the date the property was forfeited to petitioner, a statement that 2CC could lose its interest in the property as a result of the foreclosure, a legal description, parcel number, and street address of the property, the person to whom the notice is addressed, the total amount to redeem the property as of March 1, 2013 ($14,743.24), the date and time of the show cause hearing (January 15, 2014), the date and time

of the foreclosure hearing (February 18, 2014), and a statement that unless the forfeited delinquent taxes, penalties, interest and fees were paid on or before March 31, 2014, 2CC would lose its interest in the property and title to the property would absolutely vest with petitioner. Martin J. Spaulding, general manager of Title Check, stated in an affidavit that the December 6, 2013 notice letter was returned to Title Check on January 14, 2014 marked "Refused—Unable to Forward." On December 20, 2013, a copy of that same notice letter was sent via first class mail to 2CC at the same address.

On December 19, 2013, December 26, 2013, and January 2, 2014, a notice of show cause hearing and judicial foreclosure hearing was published in the Cassopolis Vigilant, a weekly newspaper circulated, printed, and published in Cass County, Michigan. The notice contained a list of properties subject to foreclosure, and indicated that 2CC owed $14,743.24 as of March 1, 2013, for the subject property, identified by parcel number. The notice also included the dates of the show cause hearing and the judicial foreclosure hearing, and indicated that title to the property would vest absolutely in the foreclosing governmental unit if the delinquent payments were not paid by March 31, 2014.

The show cause hearing took place in January 2014. The record does not indicate who did or did not appear at the hearing, but suggests that no one appeared on behalf of 2CC.

On February 18, 2014, the hearing on the petition for foreclosure was held as scheduled, at which no one appeared on behalf of 2CC to contest the foreclosure. The trial court made the following findings of fact:

> 1. that as required by MCL 211.78k(5)(f) all persons entitled to notice and an opportunity to be heard have been provided that notice and opportunity and have been afforded due process as required by MCL 211.78(2).
>
> 2. that the County Treasurer of the County of Cass or her Agents have complied with the procedures for provision of notice by mail, for visits to forfeited property, and for publication as found in MCL 211.78i, and
>
> 3. that each person entitled to notice was provided proper notice or if not so notified either:
>
>> (i) had constructive notice of the hearing under this section by acquiring an interest in the property after the date of the notice of forfeiture was recorded under MCL 211.78g.
>>
>> (ii) appeared at the hearing or filed written objections with the clerk of the circuit court prior to the hearing or
>>
>> (iii) prior to the hearing had actual notice of the hearing

The trial court ordered that a judgment of foreclosure be entered based on forfeited unpaid delinquent taxes, interest, penalties, and fees for each of the listed properties, including the property owned by 2CC. The trial court further stated that fee simple title to the foreclosed

property would vest absolutely in Cass County, with no further right of redemption, if the delinquent balance was not paid on or before March 31, 2014.

Anderson stated in his affidavit that he first learned of the judgment of foreclosure on April 18, 2014, when he received a telephone call from Spaulding on behalf of Title Check, in which Spaulding asked him about the forfeiture and foreclosure and inquired whether Anderson would be attending the auction for the property. Anderson further stated that the telephone number at which Spaulding called him is not a listed number, yet Spaulding was able to obtain it from some source, and that Spaulding could have called him prior to March 31, 2014, when the foreclosure became final. Anderson stated that he did not receive any notices of tax assessments, the certificate of foreclosure, the show cause hearing, or the foreclosure action on the property. Antipov also stated in his affidavit that he did not receive any notices of tax assessments, the certificate of foreclosure, the show cause hearing, or the foreclosure action, and that he first learned of the judgment of foreclosure when Anderson advised him of the telephone call from Spaulding.

On July 3, 2014, respondents moved the trial court to set aside the judgment of foreclosure. They claimed that they did not receive constitutionally sufficient notice of the foreclosure proceedings, such that they were deprived of their property interests without due process of law. Specifically, respondents argued that petitioner knew that the 36 Bradford Lane address was not an address to which it could send a notice that was reasonably calculated to inform 2CC of the pending foreclosure. According to respondents, petitioner did not make reasonable efforts to determine an address reasonably calculated to provide 2CC with notice, and did not perform a business records search as required by statute. Furthermore, the mortgage agreement with RFA recorded on July 10, 2013, contained correct addresses for respondents, and if notice had been sent to those addresses respondents would have received notice of the foreclosure action. Finally, respondents argued that the deprivation of respondents' due process rights was particularly egregious because Title Check had actual knowledge of how to contact 2CC, as evidenced by the telephone call made by Spaulding to Anderson shortly after the foreclosure became final.

The trial court denied respondents' motion, finding that petitioner met the initial statutory notice requirements under MCL 211.78i, and that petitioner had no reason to believe notice was insufficient. The trial court held that petitioner had no statutory duty to search Indiana business records for 2CC's address. The trial court found that due process requirements were met by petitioner because petitioner sent certified mail to the address listed in the deed,[3] sent several first class letters to that address, posted notice on the property, and published notice in a newspaper. The trial court found that taken together, those actions reflected efforts reasonably calculated to inform interested parties and complied with both statutory and case authority, and noted that the presence of actual notice is not a deciding factor in the analysis. Regarding RFA, the trial court found that because the mortgage had not yet been recorded when petitioner performed its title

---

[3] In actuality, petitioner sent letters to the correct Oak Brook address, notwithstanding the deed's mistaken reference to "Chicago."

check, and because the certificate of foreclosure was recorded before the mortgage, petitioner had no duty to provide RFA with any additional notice of the foreclosure.

This appeal followed. On appeal, respondents raise the same claims they preserved before the trial court in their motion to set aside the judgment. *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

## II. STANDARD OF REVIEW

This Court reviews de novo questions of law, including issues of constitutional and statutory construction, *In re Petition by Wayne County Treasurer*, 478 Mich 1, 6; 732 NW2d 458 (2007), and including whether a party has been afforded due process, *Rental Properties Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 532; 866 NW2d 817 (2014). "This Court reviews for an abuse of discretion a trial court's decision on a motion to set aside a judgment under MCR 2.612." *Id*. at 531.

## III. ANALYSIS

The trial court correctly held that respondents' due process rights were not violated.

After a judgment of foreclosure is entered pursuant to the GPTA, "if a property owner does not redeem the property or timely appeal the judgment, MCL 211.78k(6) deprives the trial court of jurisdiction to alter the judgment of foreclosure." *In re Petition by Wayne County Treasurer*, 478 Mich at 8. Because respondents did not redeem the property or file a timely appeal of the foreclosure judgment, and petitioner did not cancel the foreclosure pursuant to MCL 211.78k(9), MCL 211.78k as written prevents respondents from seeking recourse in the trial court through a motion to set aside the judgment. This remains true even if a foreclosing governmental unit "only partially complies with the GPTA notice provisions . . . as long as there is constitutionally adequate notice." *In re Petition by Wayne County Treasurer*, 478 Mich at 10 n 19.

However, for "property owners who have been denied due process in this statutory foreclosure scheme, this provision of the GPTA is unconstitutional" because it insulates violations of due process from judicial review and redress, completely denying property owners procedural due process. *Id*. at 4. Thus, despite the language of MCL 211.78k, the trial court could properly consider whether respondents were provided constitutionally adequate notice of the foreclosure.

Every property owner has a constitutional right to the due process of law in proceedings for tax foreclosure. US Const, Am V and XIV; Const 1963, art I, § 17; *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509; 751 NW2d 453 (2008). "People must pay their taxes, and the government may hold citizens accountable for tax delinquency by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking." *Jones v Flowers*, 547 US 220, 234, 126 S Ct 1708, 164 L Ed 2d 415 (2006). "A fundamental requirement of due process in such proceedings is 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their

objections.' " *Sidun*, 481 Mich at 509, quoting *Mullane v Central Hanover Bank & Trust Co.*, 339 US 306, 314, 70 S Ct 652, 94 L Ed 865 (1950). "[T]he means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice." *Id.*, citing *Mullane*, 339 US at 315. However, "due process does not require that a property owner receive actual notice before the government may take his property." *Id.*, citing *Jones*, 547 US at 226. "It is worth noting that the government's constitutional obligation to provide notice is not excused by an owner's failure to keep his or her address updated in government records. A party's ability to take steps to safeguard its own interests does not relieve the government of its constitutional obligation." *Id.*, citing *Jones*, 547 US at 232.

"A notification method may be reasonable and constitutional if employing the method is 'reasonably certain to inform those affected,' or, when circumstances do not reasonably permit such notice, if the method employed is not substantially less likely to provide notice than other customary alternative methods." *Id.* at 510, quoting *Mullane*, 339 US at 315. The reasonableness of the notification method used can vary, depending on what information the government has. *Id.* " '[W]hen mailed notice of a tax sale is returned unclaimed, the State must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so.' " *Id.*, quoting *Jones*, 547 US at 225. " 'Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency.' " *Id.* at 511, quoting *Mullane*, 339 US at 319. However, "[a]lthough the government must take reasonable additional steps to notify the owner, it is not required to go so far as to 'search[] for [an owner's] new address in the . . . phonebook and other government records such as income tax rolls.' " *Id.* at 512, quoting *Jones*, 547 US at 235-236.

Respondents argue that petitioner failed to satisfy the notice requirements of the GPTA in several ways, and that those failures under the statute demonstrate petitioner's failure to provide constitutionally adequate notice of the foreclosure proceedings. However, "the constitution does not require strict compliance with all the statutory notice requirements." *In re Petition by Wayne County Treasurer*, 478 Mich at 10 n 19; see also MCL 211.78(2) (stating that the GPTA does not create any rights or cause of action beyond those afforded by constitutional due process). Thus, the relevant question is whether respondents in this case were afforded notice that satisfies due process, not whether petitioner met each provision and requirement of the GPTA. See *Sidun*, 481 Mich at 510 n 4.

Respondents claim that because RFA's mortgage was recorded before the 2014 foreclosure hearing, petitioner was required to provide notice to RFA beyond the notice contained in the certificate of forfeiture that petitioner recorded pursuant to MCL 211.78g(2) on April 12, 2013. However, because petitioner recorded the certificate of forfeiture before RFA obtained its interest in the property, petitioner had no duty to send RFA any further notice of the foreclosure proceedings. See *First Nat Bank of Chicago v Dept of Treasury*, 280 Mich App 571, 592; 760 NW2d 775 (2008) (O'Connell, J., dissenting), adopted by reference in *First National Bank of Chicago v Dept of Treasury*, 485 Mich 980; 774 NW2d 912 (2009) (stating that when a mortgage interest was acquired after the date that the county treasurer recorded the certificate of forfeiture, the treasurer was not required to provide any further notice of the foreclosure proceedings to the mortgage holder). The notice recorded in the certificate of forfeiture provided

sufficient notice of the pending foreclosure to any interested parties whose interests arose after that certificate of forfeiture was recorded. *Id*; see also *First National Bank of Chicago*, 485 Mich at 981 (Young, J., concurring) ("The constructive notice provided by recording a certificate of forfeiture pursuant to MCL 211.78g(2) provides constitutionally adequate notice for those property interests that are unknown and not of record at the time the property is forfeited to the county treasurer."). Thus, RFA was not deprived of its property interest without due process of law, and the trial court did not err in denying the motion to set aside the foreclosure judgment based on the notice provided to RFA.

Regarding 2CC, petitioner first attempted to provide notice to 2CC through two certified mail letters that were returned. The return of these letters informed petitioner that its attempt at notice had failed, and that it was required to "take additional reasonable steps to attempt to provide notice to the property owner." *Sidun*, 481 Mich at 511. Petitioner then sent notice letters via regular mail to the corrected Oak Brook address, which was a reasonable follow-up measure aimed at the possibility that the 2CC's representative still lived at that address but was unable to retrieve the certified notice letters. *Id*. at 511-512. In addition, a representative of petitioner posted notice of the pending foreclosure at the actual property. The parties do not dispute that there was a house under construction on the property at the time, and that there was evidence of activity on the property. The record reflects that notice was posted over six months before the foreclosure hearing, and at least three witnesses indicated that they saw the posting. We conclude that the attempted mailings and the posting of notice at the property satisfied the minimum requirements of due process. The posted notice in the circumstances of this case was "reasonably calculated . . . to apprise interested parties of the pendency of the action." *Sidun*, 481 Mich at 509 (quotation marks and citation omitted).

Petitioner also published notice of the pending foreclosure in a local newspaper for three consecutive weeks. Our Supreme Court has held that newspaper publication is a formality that is unlikely to provide actual notice. *Dow v State*, 396 Mich 192, 207-208; 240 NW2d 450 (1976). However, even if notice by publication would not by itself be sufficient, when considered with the notices sent by certified and regular mail, the recorded certificate of forfeiture, and especially the posted notice, the record demonstrates that 2CC was provided sufficient notice to satisfy due process. *Sidun*, 481 Mich at 509; *Mullane*, 339 US at 314. Due process in this case does not require that 2CC received actual notice, but only that petitioner took reasonable additional steps to notify 2CC. *Sidun*, 481 Mich at 9, 11. Furthermore, "[a]lthough the government must take reasonable additional steps to notify the owner, it is not required to go so far as to 'search[] for [an owner's] new address in the . . . phonebook and other government records such as income tax rolls.' " *Id*. at 511, quoting *Jones* at 235-236. For these reasons, this Court finds that petitioner performed constitutionally sufficient follow-up measures to provide 2CC with the notice necessary to satisfy the minimum requirements of due process. *Sidun*, 481 Mich at 509; *Mullane*, 339 US at 314.[4]

---

[4] We note that the circumstances of the instant case are distinguishable from the insufficient notice in *Sidun*, because nothing in the record indicates that petitioner knew of or had in its

Because petitioner met the minimum requirements of due process in providing notice to respondents, the trial court did not abuse its discretion by denying respondents' motion to set aside the judgment of foreclosure. *Rental Properties Owners Ass'n*, 308 Mich App at 532.

Affirmed.

/s/ Patrick M. Meter
/s/ Mark T. Boonstra
/s/ Michael J. Riordan

---

possession other means of providing notice to 2CC before the foreclosure hearing. *Sidun*, 481 Mich App at 515-516.